LEMMON, Judge.
This is an appeal from a jury verdict in a suit involving an injury to a 2\/2 year old child, James Gregory Lefevre, who was run over by an automobile belonging to the next door neighbor, Hugh Russell Bur-ney.
Mrs. Burney had returned to her home from an early morning shopping trip with her four year old daughter, Cynthia. They had bought a cake and other confectionary items for Cynthia’s birthday party that afternoon. Mrs. Burney drove into the driveway and parked on the inclined portion of the driveway behind a travel trailer which was stored in the carport. The point at which she parked was approximately one foot higher than the sidewalk, eighteen feet away.
Mrs. Burney placed the automatic transmission lever in the “park” position and depressed the emergency brake. She and Cynthia then exited from the driver’s side. Since she was carrying packages, her purse and her key chain containing both the house and car keys, Mrs. 'Burney shoved the car door with her arm and heard it bounce against the frame. She then went into the house, while Cynthia ran over toward James Lefevre and his four year old brother who were playing in their front yard.
After Mrs. Burney placed the packages down inside the house and while she was returning to finish unloading the car, she heard a scream. She ran outside and saw James Lefevre lying on the sidewalk at the point where the sidewalk intersects the Burney driveway. Cynthia was standing on the front seat of the Burney vehicle, which had come to rest in the middle of the street. Mrs. Burney and several others hastened to assist the injured child. When it was decided to take the child to the hospital, Mrs. Burney had to return to her house to get her car keys in order to move her vehicle which was blocking the dead end street. She recalled at trial that her emergency brake light flashed when she turned on the ignition and that she released the emergency brake before moving her car. However, she did not testify as to the position at which she found the transmission lever.
The child suffered severe injuries on account of which stipulated medical expenses in the amount of $12,493.16 were incurred. After a trial on the merits of the suit against the Burneys and their insurer, the jury returned a verdict of $15,000.00 for the child’s injuries, but denied recovery to the father individually for the medical expenses because of the contributory negligence of the mother. Lefevre appealed, assigning as error the denial of the medical expenses and the inadequacy of the award to his son. Defendants answered the appeal and asked that the finding of Mrs. Burney’s negligence be reversed.
We believe that the jury was justified in finding Mrs. Burney negligent under the circumstances of this case. When leaving her car unattended on án incline, it was her duty to take the necessary steps to reasonably insure that the car would not *400 roll backward down the incline and injure persons or property. The facts that children, including her own, were playing in the vicinity and that the unattended car contained candy and party favors attractive to children served to emphasize the necessity of securing the car while it was unattended. Mrs. Burney testified that Cynthia was not able to open the door when it was properly shut, and thus due care in closing the door would have prevented entry by Cynthia, who was found in the front seat ‘ immediately following the accident. Further, had Mrs. Burney securely depressed the emergency brake, the car would not have rolled backward even if Cynthia moved the transmission lever (which could not be shown by the available testimony).
We accept Mrs. Burney’s testimony that the brake light flashed when the ignition was turned on after the accident, although plaintiffs attempted to discredit this with a conflicting deposition statement, apparently in an effort to show that she had left the motor running. However, the fact that the brake had been depressed (as shown by the flashing light) but that the car had nevertheless rolled backward only confirms our conclusion that Mrs. Burney failed to properly secure her brake in violation of her duty of reasonable care as well as of R.S. 32:14S.[1]
While the evidence does not show the exact cause of the accident, it does reveal that Mrs. Burney did not discharge her duty to use reasonable care under the circumstances to prevent the car from rolling down the incline. The evidence is therefore sufficient to support the finding that Mrs. Burney was negligent. Since she was performing services for the community at the time, the husband is also liable as head and master of the community. Parish v. Minvielle, 217 So.2d 684 (La.App. 3 Cir. 1969).
As to Mrs. Lefevre’s negligence, we disagree with the jury’s legal conclusion that this negligence was a substantial factor in causing the accident.
The only allegation of negligence on her part was her failure to adequately and properly supervise the activities of her child. We agree that this failure occurred in this case, since Mrs. Lefevre contrary to Her usual rule allowed the children to play unsupervised in the front yard while she dressed. There were many other children in the neighborhood, and the street had a dead end. Nevertheless, we do not reach the question of whether her failure to be present in a supervisory capacity was negligence. It is hornbook law that the party alleging negligence bears the burden of proving it, but in addition, that party must also prove that the negligent act or failure to act was a substantial factor in causing the accident. See Pierre v. Allstate Ins. Co., 257 La. 471, 242 So.2d 821 (1970).
The only facts proved in this case are that Mrs. Lefevre was not present and that her child was run over on the sidewalk where he had a right to be. Had Mrs. Le-fevre been present, she would have been under no duty to restrict the child from walking on the sidewalk. Therefore, her failure to be present (the only negligence pleaded and proved) did not constitute negligence without which the accident would not have occurred.[2]
Perhaps a different conclusion would be required if the child had been struck by a car while in the street where he had no right to be. In that case proper supervision could have prevented his being in the street and could have avoided the accident, and *401 the perspective on proximate cause would be different. But in the present case the child was struck while he was on the sidewalk, and failure of supervision does not fall within the chain of causation.
We therefore believe that there was absolutely no evidence in the record upon which the jury could find that Mrs. Le-fevre’s failure to supervise was a substantial factor in causing the accident, and we must therefore reverse this manifestly erroneous finding.
We note that the jury was possibly misled by the following question asked of Mrs. Burney by defense counsel:
“Q. Did Cynthia tell you that James Lefevre got into the car with her and moved the lever of the transmission ?”
This question was improper and contained the suggested answer which was not admissible by competent evidence. In our opinion an instruction to disregard this question could not erase from the minds of the jurors the impression that James may have climbed into the car and moved the transmission lever. (Indeed, if this had been proved as a fact, Mrs. Lefevre’s failure of supervision would probably have constituted proximate cause.)
Counsel attempted to have Cynthia’s alleged statement admitted into evidence under the “res gestae” exception to the hearsay rule. We believe that the trial judge properly excluded this evidence. An explanation or excuse by a child exonerating herself immediately after an accident is a normal reaction, and because of her age and stipulated inability to remember any details of the accident, it was impossible to cross examine her on the accuracy of the statement. Admission of the statement would have been manifestly unjust to plaintiffs under these circumstances.
On the issue of damages, we also believe that the jury erred in abusing the much discretion with which it is vested.
The treating physician was Dr. James Brown, a surgeon, who first saw him shortly after the accident on March 24, 1969. The child’s stomach was swollen because of internal inflammation and gas in the bowels, which had become paralyzed when the gastrointestinal tract failed to function properly. A brain concussion was also diagnosed, and the doctor could not use narcotics to relieve the severe pain because of the possibility of brain and internal problems.
Two days later emergency surgery was necessary to save the child’s life. The exploratory operation to examine the entire abdominal cavity required an incision from the sternum to the navel.
The ruptured spleen, which otherwise would have bled continuously, was removed. An extensive and deep laceration of the liver was loosely closed, and a sump drain was installed through the side to remove bile, blood and debris. This required a separate stab incision in the side. Another stab incision was required in the stomach near the gallbladder to accomplish a gastrostomy, which involves the placing of a tube to drain air and fluids from the stomach. The performance of a cholecys-tostomy, the establishment of a passage from the gallbladder, was also required.
During the operation the blood pressure dropped severely several times.
Post surgical therapy consisted of intravenous feeding, antibiotics, an oxygen tent and respiratory physiotherapy, under which James was encouraged to cough and move about despite the pain in order to prevent pneumonia or collapsed lungs. Unfortunately, a minimum of pain relievers was used because it was better to keep the child alert and thus more responsive to therapy.
The child’s condition improved for a few days, but he began running a high temperature when the paralysis of the bowels continued. Suspecting an intra-abdominal abscess, Dr. Brown performed a second operation on April 5, 1969. Removing the *402 stitches and using the former incision, Dr. Brown discovered an abscess about ten inches long under the left diaphragm where the spleen was removed, and about a cupful of fluid was drained. An additional stab wound was made on the child’s opposite side to drain the spleen bed. A high temperature continued, and numerous antibiotics were administered to the child. He continued to lose weight after the second surgery.
Constant tests were conducted, including liver scans, blood tests, urine tests and finally a dye test, which indicated that the left liver duct had necrosed or died and that the entire left lobe was improperly draining. This condition caused cholan-gitis or infection in the liver ducts, which is a very serious disease. Since a duct in this condition cannot be sewn together because of the dead tissue, it was necessary to remove the left lobe of the liver which drained into the dead duct.
The hepatectomy or removal of the lobe was performed April 17, 1969, or about a week and a half after the second operation. The original incision was reopened for the third time. There was apparent scarring and adhesion between loops of the bowel and the liver surface. The left lobe and duct of the liver were removed. Dr. Brown testified that the last operation was a severe trauma for the boy to sustain, and James was very critically ill and was under intensive care for the following seven days. He was placed on a hypothermic mattress to drop his temperature and to decrease the need for body substances. He was given large infusions of protein and given blood and electrolytes.
When he responded to these treatments over a period of time, James was discharged from the hospital on May 20, 1969, but had to be readmitted on May 23, 1969, because of ascending cholangitis or infection of the liver duct. He was in the hospital from May 23 until June 3, 1969, and then again discharged.
Dr. Brown followed the child on an outpatient basis and indicated abdominal pain on eating. Six stab wounds have been made into the abdomen for the introduction of tubes into the body.
Abscesses of the stitches below the skin surface occurred in December, 1969 and May, 1970 and can be expected to reoccur. Complete prognosis was difficult, but from a standpoint of medical probability, it is not unreasonable that problems may also develop from loss of the spleen which produces antibodies to fight diseases and from intestinal obstructions because of the ad-hesions. Certainly, James is more susceptible to these problems than another child with a normal medical background.
There was medical and lay testimony regarding personality changes in the child from the extended hospitalization and intense treatment. Furthermore, permanent scarring resulted from the extensive incision and six stab wounds.
The assessment of damages in this case must take into consideration pain and suffering, mental anguish, permanent disability and loss of physical function, impairment of earning capacity, and embarrassment and humiliation, all from the standpoint of both past and future suffering. While we acknowledge that a jury verdict should not be disturbed on appellate review unless manifestly erroneous, we believe that the verdict in this case is so grossly inadequate as to constitute an abuse of discretion. We therefore set aside the jury verdict and set the award at $45,000.00 for the damages sustained by James Lefevre.
We note, in setting aside the jury’s conclusion on damages, that further improper evidence was allowed to be presented. Hospitalization insurance in the amount of $10,000.00 collected by Mr. Le-fevre because of premiums he paid for that coverage played no part in this suit for damages against the Burneys and their liability insurer. Therefore, consideration of this fact was entirely irrelevant to the is *403 sues of this case and should have been ex-eluded.
We do not subscribe to a practice of disregarding jury verdicts, as may appear has been done here. However, when we consider the influencing circumstances of the incorrect legal conclusion on proximate cause involving Mrs. Lefevre’s alleged negligence, the improper question which planted a seed of doubt that the child may have himself caused the accident, and the allowance of evidence of hospitalization insurance which indicated that the Lefevres had been reimbursed for almost all of their medical expenses, we are compelled to conclude that the jury award did not adequately compensate the child for the serious injury that he sustained.
For the foregoing reasons, the portion of the judgment of the trial court awarding $15,000.00 to Donald A. Lefevre as administrator of the estate of his minor child, James Lefevre, is amended to increase the award to $45,000.00, and as amended is affirmed. The portion of the judgment dismissing the suit of Donald A. Lefevre individually is reversed, and judgment is rendered in favor of Donald A. Lefevre individually and against Hugh Russell Bur-ney, Myrna Burney and Allstate Insurance Company in the sum of $10,493.16 [2], together with legal interest from the date of judicial demand. All costs are assessed to defendants-appellees.
Amended and affirmed in part reversed and rendered in part.

. R.S. 32:145 reads:
“No person driving or in charge of any motor vehicle shall permit it to stand unattended without first stopping the motor, locking the ignition, removing the key, and effectively setting the brake thereon, and, when standing upon any grade, turning the front wheels to the curb or side of the highway.”

. The “but for” test, while not acceptable as a test to determine proximate cause, is valid to determine whether an act should be excluded from the chain of causation.

. It was stipulated that any award for medical expenses would be in this amount.