177 So.2d 630 (1965)
Margaret Annette KNOTTS, Plaintiff and Appellee,
v.
EMPLOYERS CASUALTY COMPANY et al., Defendant and Appellant.
No. 1478.
Court of Appeal of Louisiana, Third Circuit.
July 30, 1965.
Simon, Carroll, Fitzgerald & Fraser, by Richard A. Fraser, Jr., Shreveport, for defendants-appellants.
Thomas & Friedman, by Gerard F. Thomas, Jr., Natchitoches, for plaintiff-appellee.
Before TATE, FRUGE and CULPEPPER, JJ.
CULPEPPER, Judge.
This is a suit for damages for personal injuries. After trial, the jury returned a verdict for plaintiff in the sum of $55,000. Defendant appealed.
The sole issue on appeal is the amount of the award.
The law as to appellate review of damages is set forth in the recent much discussed *631 case of Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963), and its progeny, Ballard v. National Indemnity of Omaha, Nebraska, 246 La. 963, 169 So.2d 64 (1964). In the Ballard case, it is stated that appellate review is confined to determining whether there has been an abuse of the "much discretion" vested in the trial court. Our Supreme Court there said:
"The amounts of awards in so-called `similar' cases are relevant only to determine whether there has been an abuse of discretion, but for no other purposethat is, to determine whether the award is so excessive or so inadequate as to be an abuse of discretion. In this connection it must always be remembered, as said in Gaspard, that `* * * cases relied upon may be similar in that each of them involves a similar injury such as a broken arm, the loss of an eye or eyes, or the loss of some member of the body. Thereafter, however, the similarity ceases for each case is different, and the adequacy or inadequacy of the award should be determined by the facts and circumstances peculiar to the case under consideration.'"
The general facts show that plaintiff, 23 years of age, was injured in an automobile collision which occurred on a rural road in Natchitoches Parish on July 19, 1964. The defendant driver was seized with a sneezing spell and swerved to the wrong side of the road, where he struck headon the automobile in which plaintiff was a guest passenger on the front seat. Miss Knotts was thrown violently forward and her head went into and partially through the glass windshield. She received lacerations on her forehead, nose, cheeks, upper and lower lips, both corners of her mouth and chin, left shoulder and left leg below the knee. Four lower front teeth were broken out and pushed back into her mouth, along with fragments of the jawbone. One other lower front tooth was broken and had to be subsequently removed. In addition, 4 upper front teeth were loosened and subsequently died, necessitating root canal therapy and capping. Also, she received a sprain of her right ankle.
After the accident, plaintiff was taken to a hospital in Natchitoches where she was treated by Dr. James V. Kaufman, a general practitioner and surgeon, and by Dr. J. T. Melancon, a dentist. She was in the hospital only 6 days but soon thereafter began a long series of dental treatments. The lacerations about her face, shoulder and leg healed, but left disfiguring scars for which plastic surgery may be attempted. However, the success thereof is questionable.
Included in the jury's award of $55,000, are the following special damages which are not disputed:

Natchitoches Parish Hospital (P-16) $ 218.30
Dr. Kaufman (P-17) 332.00
Dr. Melancon (P-18) 912.00
Dr. Melancon (P-21) 200.00
Drug Bills (P-20) 12.21
Future Plastic Surgery (Dr. Butler) 850.00
Loss of Wages 1,260.00
 __________
TOTAL $ 3,784.51

Plaintiff contends that in addition to the above amount, an additional $6,300 in special damages for future dental treatment was proved. Defendant argues these future dental expenses are too speculative. However, Dr. J. T. Melancon, the treating dentist, itemized thoroughly these future dental expenses and testified they would be *632 necessary. We think the estimate by Dr. Melancon is reasonable and fully justified.
Thus, of the $55,000 total award, $10,000 may be allowed for special damages, leaving $45,000 in general damages.
In reviewing the general damages, we will start by observing that plaintiff's most serious injuries are those to her teeth and the disfiguring scars on her face.
We will first discuss the injuries to the mouth and teeth.
At the hospital, all that Dr. Melancon could do was remove the 4 lower teeth, which had been knocked out, and suture the gum. The 4 upper front teeth which had been loosened, were manually forced by Dr. Melancon back into the jawbone. After she had been out of the hospital 5 days, plaintiff began, on July 30, 1964, a program of prolonged and painful dental treatment. The lower gum had to be reopened and certain remaining tooth roots and bone fragments removed. Eventually, after the soreness had subsided and the lower gum had begun to heal, a temporary bridge was provided in place of the 4 lower teeth. After observing the upper teeth about 2 months, it became apparent that they were dead. In a series of dental visits the nerves were removed from the dead teeth and the root canals reamed. Then the 4 dead teeth, and 1 tooth on each side, were ground down to pegs and crowns applied.
But this is not the end of her dental problems by any means. Dr. Melancon explained that a portion of her lower jawbone, on the inside, was broken off when the teeth were pushed back into her mouth. The loss of this bone, and the continuing shrinkage of the surrounding tissue, will require many future changes of the lower bridge, and might even endanger the nerves leading to the other lower teeth.
The upper teeth will also, according to Dr. Melancon, require a great deal of future care. In 12 to 24 months the 4 dead teeth will have to be removed and a bridge provided.
Dr. Melancon's estimate of future dental care, and the cost thereof, is as follows:

Lower permanent bridge needed immediately $200.00
In 12 to 24 months removal of 4 upper teeth and provide
permanent bridge 450.00
 per
Replacement of the upper bridge every 8 to 15 years (a total replacement
of about 9 times during her life expectancy) 200.00
 per
Replacement of the upper bridge every 8 to 15 years (a replacement
total of about 4 times) 450.00
Extremely close dental observation for the rest of her life
because the loss of any further teeth will be much more
damaging than would be true if she had not lost these per year
teeth 50.00

In addition to the cost of all this past and future dental care, the physical and mental pain and suffering incidental thereto is a considerable factor in the assessment of damages. Also, the loss of function of the teeth and the disfiguring aspects of the false teeth are factors considered.
Turning now to the facial disfigurement, we note at the outset the special circumstance that Miss Knotts is 23 years of age and was a young lady of unusual beauty. She was Miss Bienville Parish, Miss Watermelon Queen, a Princess in the Holiday in Dixie Beauty Pageant, and a representative *633 of outstanding feminine beauty at the Cotton Festival. As most able counsel for the plaintiff has pointed out, plaintiff's beauty was her most cherished possession. This, indeed, is a special fact and circumstance peculiar to the case under consideration. As plaintiff's counsel has aptly put it, "Defendants have killed War Admiral and want to pay for killing the old plow "horse, Nellie'".
The pictures exhibited to the jury, and filed in the record, demonstrate dramatically plaintiff's beauty before the accident and her scarred face after the accident. Perhaps the best verbal description of these scars is given by Dr. Lewell C. Butler, Jr., a plastic surgeon of Shreveport, Louisiana, who examined plaintiff at the request of defendants on December 7, 1964, and found the following:
"On the forehead, two scars were present at the junction of the forehead with the hairline on the left side, one an oval area, approximately three quarters of an inch in diameter, which appeared to be a healed abrasion, and the other was a vertically running scar, measuring approximately one inch by one sixteenth of an inch wide, with some elevation of the skin on the inner aspect of the scar, which is doubtless due to a bolstering effect of the deeper portion of the scar, which the deep part of the scar, in pulling on the skin, throws the overlying portion into a small fold. Next on the eyebrow, three linear inconspicuous areas were present near the inner end of the left eyebrow, the entire area involved measured approximately one half inch by a quarter of an inch. These, as did the one on the forehead, appear to be something in the nature of a healed abrasion or brush burn. On the nose was a vertical scar, measuring approximately a half an inch in length, which was quite inconspicuous. Cheek, on the right cheek was a slightly depressed obliquely running scar, measuring one half inch by a sixteenth of an inch in width. On the left cheek was an obliquely running very faint linear scar, one inch in length. Upper lip, in the center of the upper lip, midway between the nose and the free margin of the lip, was an oval pale scar, measuring an eighth of an inch by three sixteenths of an inch. At each corner of the mouth was an obliquely running scar coursing downward and outward from the corner, measuring a half an inch in length by a sixteenth of an inch in width. There was a very slight depression at the outer portion of each scar. On the lower lip, on the lower lip, an elevated zone of the free margin of the lower lip was present slightly to the left of the center line, this was due, again to a puckering effect of an inch scar beginning on the outside and curving to the inside of the mouth, throwing the free margin of the lip in a fold. On the skin of the lower lip near the center, was a slightly elevated scar, measuring one eighth of an inch by three eighths of an inch. On the left shoulder, at the junction of the shoulder and the upper arm, was a vertically running scar, slightly depressed, measuring three quarters of an inch by an eighth of an inch wide. On the left leg, just below the left knee, was an obliquely running scar, measuring one and a half inches in length by one quarter inch in width, at this time the scar was flat and red, and there were several prominent stitch marks still present."
Dr. Butler explained that the purpose of plastic surgery in this case would be to remove the conspicuous and disfiguring scars and replace them with as fine a linear scar as possible. He recommended plastic surgery for the longest scar on the forehead, the obliquely running scar on the right cheek, all scars about the mouth and lips and the scars on the left shoulder and leg. However, he frankly admitted that such surgery might not help the scars on *634 the lower lip, because the deep muscles and tissues there were severed, as the lower lip was literally torn apart. Plastic surgery would involve recreating the original tear, but this would cause new scar tissue, which might again result in the pulling and puckering of the outside skin.
In this connection, Dr. Kaufman, the attending physician in Natchitoches, testified that he was of the opinion plastic surgery would be of questionable value and might possibly even worsen these facial scars.
Defendant argues that a fair award would be $7,500 for loss of teeth, and $5,000 for the pain, suffering and residual scarring, which defendant contends can be greatly improved by plastic surgery, making a total of $12,500 for general damages. Teeth cases cited by defendant include: McCorquodale v. Watson, La.App., 170 So.2d 545 (3rd Cir. 1965), in which we allowed $2,000 to $2,500 to a 58 year old highway engineer who lost two front teeth; McInnis v. Terry, La.App., 121 So.2d 329 (1st Cir. 1960), where a high school boy was allowed $2,400 for the loss of three teeth and cuts and bruises on the lips received in a fight.
As to facial scarring, defendant cites Fontana v. State Farm Mutual Automobile Ins. Co., 173 So.2d 284 (3rd Cir. 1965), where we allowed $3,000 to a 20 year old young lady for pain, suffering and a one-half inch residual scar at the corner of the eye, which was not very noticeable. In the Fontana case we cited a number of previous cases awarding damages for facial disfigurement, where the awards ranged from $2,000 to about $3,500, but it is apparent that in none of these cases were the scars as disfiguring as in the present case, nor did the special circumstances of this case exist.
Defendant also cites and quotes at length Fullilove v. U. S. Casualty Co. of New York, La.App., 129 So.2d 816 (2nd Cir. 1961), where the court awarded $22,500 to a 28 year old married woman who received a broken jaw and nose, loss of 7 teeth, fractures of the hand and foot and some disfigurement of the face requiring plastic surgery.
Plaintiff cites Bernard v. Hungerford, La.App., 157 So.2d 246 (3rd Cir. 1963), where we affirmed a lower court award of $20,000 to a 32 year old married woman, who received serious facial injuries, fracture of the nose, injury to her leg, and a back injury; she lost 7 teeth in the accident and later lost all of her remaining teeth; and future medical care was necessary. In the Bernard case, we did not find the trial court's award of $20,000 was an abuse of its "much discretion", but perhaps a larger award would also have been within that court's discretion. Furthermore, in the Bernard case, although the injuries were serious indeed, they did not involve the very painful and prolonged dental procedures as in the case at bar and the age and beauty of the plaintiff was, of course, not the same. Perhaps also the facial disfigurement in the Bernard case was not as great as in the present matter.
In conclusion, we think the award of $45,000 in general damages is a little high, but we are unable to say that, under all of the special circumstances peculiar to this case, the award is an abuse of the jury's "much discretion".
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the defendant, appellant.
Affirmed.