BLANCHE, Judge.
This appeal, together with the appeal in the suit entitled “Dennis Blanchard, et al. v. Rita Griggs Lanier, Individually, etc., et al.,” No. 9489 on the docket of this Court, both arise out of an automobile accident which occurred at the intersection of Florida Boulevard and East Airport Drive in Baton Rouge, Louisiana. Involved in this two-car accident were an Oldsmobile automobile being driven by plaintiff, Mrs. Jo *515 Anne Blanchard, in a northerly direction on East Airport Drive, and a Pontiac automobile being driven by Terry Hickman in an easterly direction on Florida Boulevard. Plaintiff, Cara Johnson, a guest passenger in the Blanchard automobile, filed suit for personal injuries allegedly sustained by her in the accident, naming as defendants, Dennis Blanchard, the husband of Jo Anne Blanchard, Thomas E. Hickman, the father of the minor, Terry Hickman, and Allstate Insurance Company, the alleged liability insurer of the Hickman vehicle. Plaintiff amended her petition to make as additional defendants, Mrs. Huey E. Lanier, alleged custodial parent of the minor, Terry Hickman, at the time of the accident, and State Farm Mutual Automobile Insurance Company, an alleged additional insurer of the Hickman vehicle.
Consolidated with the Johnson suit was the suit giving rise to Appeal No. 9489 instituted by plaintiff, Dennis Paul Blanchard, individually and as administrator of the estate of his minor children who were also occupants of the Blanchard vehicle, Mrs. Jo Anne Sciortino Blanchard, wife of Dennis Paul Blanchard, individually, John E. Thompson, individually and as administrator of the estate of his minor children who were occupants of the Blanchard vehicle, and Mrs. Mary Sciortino Thompson, wife of John E. Thompson, also an occupant of the Blanchard vehicle, in which suit all occupants claimed to have sustained personal injuries as a result of the accident. These suits were consolidated for trial, at the commencement of which all individual defendants were voluntarily dismissed by the respective plaintiffs, and the defendant insurers admitted coverage, Allstate Insurance Company being the primary insurer with State Farm Mutual Automobile Insurance Company providing excess coverage. Although these appeals are likewise consolidated, separate decrees will be rendered in each case.
The trial judge rendered judgment for all plaintiffs, handing down the following Written Reasons for Judgment, from which we quote approvingly:
“ * * * From the evidence in this case, it appears that on January 27, 1971, at approximately 3:45 p. m., Mrs. Jo Anne Blanchard was operating a 1965 Oldsmobile, four-door sedan owned by her husband, Dennis Paul Blanchard, in a northerly direction on East Airport Drive in the City of Baton Rouge. Mrs. Blanchard was in the driver’s seat of the automobile; Mrs. Mary Thompson was sitting on the right front seat; Cara Johnson was sitting on the left rear seat and Susan Elaine Thompson, Denise Paula Blanchard, Dennis Paul Blanchard, II, John Paul Thompson, and Joh-nelle Marie Thompson were all on the rear seat in undetermined positions. East Airport Drive is a two-lane street running north and south and intersects with Florida Boulevard which at the time of this accident was a six-lane divided highway running east and west. Immediately prior to this accident, Terry Hickman was operating a 1970 Pontiac Firebird two-door owned by Thomas E. Hickman. The Hickman vehicle entered Florida Boulevard from Wooddale Avenue. It was shown that Hickman did not stop at the intersection because he was favored by a green light and that he proceeded to turn left at a slow rate of speed in order to proceed on Florida Boulevard in an easterly direction. The evidence showed that there was a stop sign controlling traffic on East Airport Drive and that Mrs. Blanchard did come to a full stop. The evidence further showed Mrs. Blanchard looked to her left and saw the Hickman vehicle as it was crossing the west bound lane of Florida and beginning to turn left into the east bound lane. Evidence further reveals that Mrs. Blanchard looked to her right and then entered the intersection with the intention of going across the east bound lane and making a left turn in order to proceed west on Florida Boulevard. It was shown that Mrs. *516 Blanchard could not go all the way across Florida Boulevard and make her turn because a blue vehicle was headed west in the inside west bound lane of Florida Boulevard. And so, Mrs. Blanchard stopped her vehicle or at least slowed her vehicle to a very slow rate of speed. There was some evidence that Mrs. Blanchard brought her vehicle to a stop, and there was other testimony to the effect that she wasn’t quite stopped at the time of the accident. Evidence further revealed that the Hickman vehicle was the first vehicle in its line to go under the light at Wooddale and Florida and was the lead vehicle after the completion of its turn, headed east. There was testimony to the effect that at least one car was behind or at least to the rear of the Hickman vehicle as it proceeded east.
“The Court is of the opinion that the driver of the Hickman vehicle was guilty of negligence in that he failed to see the Blanchard vehicle until it was almost immediately in front of him; that there was nothing to impede his vision; that he was not keeping a proper lookout, and that he failed to take evasive action in order to avoid the accident. The Court is at a loss to understand why Hickman was not able to see the Blanchard vehicle. Evidence shows that the Hickman vehicle left approximately fifty feet of skid marks in the middle east bound lane leading up to the point of collision. The impact was rather heavy. These facts indicate to the court that either Hickman was operating his vehicle at an excessive rate of speed or that he was distracted or inattentive and did not apply his brakes until it was too late to avoid the collision.
“The Court is of the opinion, considering all of the evidence and testimony in this case, in these cases that: Mrs. Blanchard did stop at the stop sign on East Airport Drive; she did look to the left and saw the Hickman vehicle as it entered Florida Boulevard from Wooddale Avenue; she did pull out at a slow rate of speed and look to her right, and, not knowing whether or not the blue car which was headed west on the inside lane of Florida Street was going to proceed west or if it was going to make a left turn onto East Airport, Mrs. Blanchard either brought her vehicle to a stop or to an extremely slow rate of speed while her vehicle was at least partially in the middle lane of the three east bound lanes of Florida Boulevard. The Court believes Mrs. Blanchard, after pulling onto Florida Boulevard, never once looked to her left to determine if any vehicles were approaching.
“In the opinion of the Court, Mrs. Blanchard is guilty of negligence in that she failed to maintain a proper lookout; that she failed to again look to her left to determine if any vehicles were approaching her car; and that she was negligent in stopping or slowing her vehicle where she did. The Court is aware that it would not be negligence, per se, for an automobile to enter a divided highway and to stop in the neutral area, but that is not what Mrs. Blanchard did. She drove her vehicle to the point where probably the front end of her vehicle was in the neutral area but that the rear of her car extended across the entire inside lane and into the middle lane of the east bound traffic.
* * * * * *
“We have previously set forth the facts surrounding this accident and the reasons why this Court found that both drivers were negligent. The only important matter to consider is that of last clear chance.
“It is readily apparent to the Court that Mrs. Blanchard placed herself in a position of peril. It may be argued that she could have extricated herself from this perilous position by driving her vehicle forward somewhat, at least enough to clear the middle lane. There should have been sufficient room for her to do *517 this without the front of her vehicle protruding into the inside lane of west hound traffic on Florida Boulevard.
“That would be a good argument, except for the fact that Mrs. Blanchard was unaware of the perilous position she was in. She did not look again to her left — she did not know that she was in danger.
“In analyzing the actions of Hickman, it is clear to this Court that Hickman had the last clear chance to avoid this collision. By even the most casual attention and observation, he should have been able to see the Blanchard vehicle in sufficient time to take successful evasive action. It was never proven that another vehicle was travelling east in the outside lane, thereby preventing Hickman from changing lanes. If there was a vehicle in the outside lane, it was far enough to the rear of Hickman for Hickman to have moved into the outside lane without endangering the vehicle to the rear.
“The Court feels that if Hickman had been keeping the proper lookout, he would or should have been able to stop or slow and avoid the Blanchard vehicle by the application of his brakes, without the necessity of changing lanes.
“Even assuming that Hickman’s testimony is correct about the Blanchard vehicle pulling in front of him slowly, then Hickman still had the last clear chance to avoid the collision by moving to the outside lane.” (Written Reasons for Judgment, Appeal Record No. 9488, pp. 31-36)
From the adverse judgments, defendants perfected these suspensive appeals, contending that the trial judge erred in finding Terry Hickman guilty of any negligence and in finding applicable the doctrine of last clear chance. Both Cara Johnson and Mrs. Mary Sciortino Thompson answered the respective appeals of defendants seeking an increase in the award of general damages for injuries sustained by each of them.
From our review of the entire record we cannot say that the trial court was manifestly erroneous in concluding that Hickman was guilty of negligence and that the last clear chance doctrine applied to the particular facts giving rise to this accident.
The whole question of liability turns upon a factual determination of whether or not Mrs. Blanchard entered Florida Boulevard at a point in time and distance where Terry Hickman saw or should have seen the vehicle which she was operating in time either to bring his vehicle to a stop or to take evasive action. The trial judge resolved this determination in favor of plaintiffs and adverse to defendants, summarizing the critical findings of fact as follows:
“In analyzing the actions of Hickman, it is clear to this Court that Hickman had the last clear chance to avoid this collision. By even the most casual attention and observation, he should have been able to see the Blanchard vehicle in sufficient time to take successful evasive action. It was never proven that another vehicle was travelling east in the outside lane, thereby preventing Hickman from changing lanes. If there was a vehicle in the outside lane, it was far enough to the rear of Hickman for Hickman to have moved into the outside lane without endangering the vehicle to the rear.”
(Written Reasons for Judgment, Appeal Record No. 9488, p. 35)
The evidence substantiates these findings.
Mrs. Blanchard testified that before starting to cross the eastbound lanes of Florida Boulevard, she looked to her left and saw the Hickman vehicle down at the *518 Wooddale Boulevard intersection in the process of turning left onto Florida Boulevard. This testimony was corroborated by Mrs. Thompson, who testified she made a similar observation. Terry Hickman testified that Mrs. Blanchard did not enter Florida Boulevard from East Airport Drive until he was only a short distance to the west thereof. This testimony, however, was contradicted, not only by the testimony of both Mrs. Blanchard and Mrs. Thompson, but also by the testimony of Owen Triche, who testified that the Blanchard vehicle pulled out into the eastbound lanes of Florida Boulevard at a time when the Hickman vehicle was around halfway between the intersection of Florida Boulevard and Wooddale Boulevard and the intersection of Florida Boulevard and East Airport Drive. The plat offered in evidence shows the interval between these two intersections to be in excess of 160 yards. In support of the trial judge’s finding that there was no proof of a vehicle in the outside, eastbound lane of Florida Boulevard such as to prevent young Hickman from changing lanes and thus taking reasonable evasive action which was available to him is the testimony of Hickman himself confirming that whatever vehicle was in that lane was considerably to the rear of young Hickman inasmuch as he could detect the vehicle in his rear view mirror, which means the vehicle had to be considerably behind Hickman to be detectable by him while it was in the lane to his right.
The trial judge was not manifestly erroneous in finding Hickman guilty of negligence and in applying the doctrine of last clear chance to the instant litigation, cf., Gallioto v. Chisholm, 126 So.2d 63 (La.App. 4th Cir. 1960), certiorari denied.
In considering the respective requests that this Court on appeal increase the trial court’s award of general damages, we are reminded of the mandate by the Supreme Court of judicial temperance, as aptly summarized by our brethren of the Fourth Circuit in Riley v. Frantz, 253 So.2d 237, 241, 242 (La.App. 4th Cir. 1971):
“It is a most strong tenet in the law of this state and its jurisprudential holdings that, on appellate review, the trier of fact’s award of general damages should not be disturbed unless there is a finding in the appellate court that the trial judge has abused its vast discretion, after taking into consideration that each personal injury must be evaluated according to its own peculiar facts and circumstances. LSA-C.C. art. 1934(3); Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967); Ballard v. National Indemnity Company, 246 La. 963, 169 So.2d 64 (1964); Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963).
“The Court of Appeal in Fish v. Martin, 201 So.2d 341, 343 (La.App. 3rd Cir. 1967) held:
‘ * * * that prior awards for seemingly similar injuries are relevant only insofar as they may indicate that the present award is so greatly out of proportion with them as to indicate a possible abuse of the trial court’s great discretion. Also, the appellate court should take into consideration that it is principally the function of the fact-trier to evaluate the credibility of an injured person’s complaints as to the magnitude and duration of the residual pain. * * *’ (Italics ours)
“The Supreme Court in the recent case entitled Miller v. Thomas, 258 La. 285, 246 So.2d 16 (1971) stated that in Lomenick v. Schoeffler, supra, and the cases cited therein,
‘ * * * this Court undertook to reemphasize the codal provision in a series of pronouncements designed to make clear to the intermediate courts of appeal the vitality of the codal approach to the review of damage awards.’ (246 So.2d 18)
* * * * * *
*519 ‘From these decisions, two principles emerge: (1) To modify the amount of an award for general damages, an appellate court must find that the trial judge or jury has abused the “much discretion” accorded by the codal provision; (2) The awards in other cases serve only as an aid in determining whether there has been an abuse of discretion and rivet no steel frame of uniformity.
Applying these principles to a personal injury award often presents real difficulty. The facts relating to the injuries must be collated in each case. Upon these facts, the Court must focus an informed judgment, tempered by a fair recognition of the discretion vested in the trial judge or jury.’ (246 So.2d 19)”
Bearing the foregoing principles in mind, we cannot say from our review of the record that the award of general damages to the plaintiff, Cara Johnson, in the principal sum of $5,000 constitutes an abuse of the great discretion vested in the trier of fact. The trial judge found that Cara Johnson was disabled and unable to work for a period of sixteen weeks post-accident but no longer. She was admitted to Earl K. Long Hospital on January 27, 1971, with a diagnosis of her having sustained a fracture of the inferior and superior pubic rami with a minimal displacement near the acetabular rim, a nondisplaced fracture of the distal tip of the right fibula, and fractures of the fifth and sixth ribs on the left. She was treated only with bed rest and was discharged from the hospital on February 2, 1971, to be followed in the clinic as an outpatient. She was seen periodically until March 12, 1971, and apparently received no further medical consideration until she was examined by Dr. Frank G. Rieger on two occasions some eighteen months after the accident. Dr. Rieger indicated that the fracture of the ankle was not serious, resulted in no displacement, was treated only with an Ace bandage, and was more like a bad sprain. Dr. Rieger also indicated that the fractured ribs healed uneventfully and with no sequelae. The only residual disability sustained by this plaintiff was that associated with the pelvic fractures, which Dr. Rieger indicated healed with some deformity, although with good union, and resulted in some associated arthritis and some pain. Dr. Rieger indicated that these fractures resulted, in his opinion, in plaintiff sustaining some whole body disability which he estimated at “maybe twenty or twenty-five percent disability.” (Transcript, p. 69) Dr. Rieger further indicated, however, that plaintiff would be able to return to performing the same type of light housework and baby-sitting which she had been doing prior to the accident with some limitation.
The trial judge was obviously not impressed with the severity of plaintiff’s residual disability and impairment as complained of by her in her testimony, and undoubtedly felt that she could return to performing her pre-accident activities without significant difficulty sixteen weeks post-accident.
The cases cited by counsel for plaintiff are factually distinguishable and involve more serious injuries and residual disability than exist in the instant litigation. The award of $5,000 general damages, although conservative, is not manifestly inadequate and does not constitute an abuse of the great discretion vested in the trier of fact in assessing general damages, cf., Nain v. State Farm Mutual Automobile Insurance Company, 241 So.2d 792 (La.App. 3rd Cir. 1970).
Plaintiff, Cara Johnson, also complains that the trial judge awarded her only the sum of $96 for lost earnings. There is no merit to this contention inasmuch as plaintiff testified only to earnings which she received from her employer, Mrs. Thompson, who testified that plain *520 tiff worked for her only one day a week prior to the accident. Plaintiff, of course, bears the burden of proving by the requisite preponderance of the evidence her claim for lost earnings. If she claims to have worked for other persons or to have worked in excess of one day per week, it was incumbent upon plaintiff to offer proof in support of such claim.
Adverting to the injuries sustained by Mrs. Mary Agnes Thompson and her request that the trial court’s award of general damages of $10,000 be increased, we reiterate the observations previously made with regard to the great discretion vested in the trier of fact in awarding general damages, and conclude from our review of the entire record that the award of $10,000 is not manifestly inadequate so as to require an increase. The trial judge indicated that while Mrs. Thompson sustained severe injuries to her teeth and experienced a lot of pain and inconvenience, nevertheless, after extensive dental treatment, she appeared to have made a good recovery as of the time of trial. This plaintiff was treated for her dental injuries by Dr. Paul Francis Kavanagh. He indicated that the patient presented herself with bruises on the lower left jaw and chin, the upper left bicuspid and molar area. The upper lip was extremely swollen. Porcelain veneer crowns on the upper right central and lateral incisors had been knocked off with those teeth being pushed lingually (inward). The upper left central, lateral, cuspid and bridge replacing the upper right cuspid had been knocked out completely. The upper left labial alveolar plate was crushed and fragmented. The lingual plate of the alveolus in the upper right central area was fractured. The occlusal surfaces (biting surfaces) of the lower back teeth were chipped. At the first treatment on January 27, 1971, Dr. Kavanagh debrided the upper left anterior area, sutured the area and x-rayed the same. He removed the sutures on February 3, 1971, and next saw the patient on February 5, 1971, at which time he took an upper and lower mouth impression so as to make some temporary teeth for her mouth. A temporary partial appliance, replacing the knocked-out teeth, and some temporary crowns for the two teeth that had had permanent crowns previously inserted, were inserted on February 12, 1971. Thereafter, Dr. Kavanagh installed a permanent device. Dr. Kavanagh confirmed that the net effect of this traumatic injury was the loss of three natural teeth, plus the loss of the bridge that was replacing a tooth lost prior to the accident, plus the loss of crowns on two other teeth. The area of restoration or replacement work was confined to the upper jaw, although repairs to numerous teeth were undertaken. The permanent device installed by Dr. Kavanagh results in all of this plaintiff’s natural upper teeth having crowns and replacements for the lost teeth, all in one piece, which is removable only by the dentist. Although she did receive some traumatic injury to lower anterior teeth, the injury was not such that Dr. Ka-vanagh could justify any therapy to them.
The record also contains the medical report of Dr. J. Rivers P. Wall, Jr., oral surgeon, who confirmed the findings of Dr. Kavanagh, and further indicated that upon replacement of the three avulsed teeth and the missing tooth with an adequate prosthesis, this plaintiff would be in a state of good dental health and aesthetics.
Counsel for plaintiff cites in support of the request for an increase in the award of general damages the case of Knotts v. Employers Casualty Company, 177 So.2d 630 (La.App. 3rd Cir. 1965). This case is not factually apposite to the instant case, since not only were the damages to the teeth more extensive in the Knotts case and necessitated more dental curative work, but the plaintiff in the Knotts case, a young unmarried woman and former beauty queen, sustained severe permanent facial scarring.
*521 The award to this plaintiff of $10,000 general damages is not manifestly inadequate and will, accordingly, be affirmed.
For the foregoing reasons, the judgment in Appeal No. 9488 is affirmed, with all costs of this appeal assessed to defendants.
Affirmed.