GULOTTA, Judge.
Midland Insurance Company (Midland), liability insurer of a host driver, appeals from a $20,110.64 award in favor of a guest passenger for injuries sustained in a rear-end collision. Liability and quantum are at issue. Plaintiff has answered the appeal, seeking an increase in general damages to the sum of $65,000.00.
*52 The accident occurred at approximately 6:00 p.m. on the misty evening of December 12,1977, at the intersection of Airline Highway and Ridgewood Street in Metairie, Louisiana. At the scene, Airline is a six-lane thoroughfare divided by a narrow median. The host vehicle driven by Richard D. Unangst was stopped in the left, median lane of Airline in the process of making a U-turn on Airline at the Ridgewood intersection when it was rear-ended by a following vehicle driven by an uninsured motorist, Mary C. Goins. In written reasons for judgment, the trial judge found the accident was caused by the combined negligence of the host driver and the following motorist.
Appealing, Midland contends: 1) the accident was caused solely by the negligence of the uninsured motorist; 2) Midland’s liability policy did not provide uninsured motorist coverage for this accident; and 3) alternatively, the award of $20,000.00 in general damages is excessive and should be reduced to $7,500.00. We consider each argument in the order raised.
CAUSATION
Prior to the collision, the Unangst vehicle had exited a parking lot adjacent to the Baton Rouge-bound lanes of Airline with the objective of crossing the median at the Ridgewood intersection and entering the New Orleans-bound lanes of Airline headed in the opposite direction. Unangst could have accomplished this maneuver by exiting the parking lot through a driveway onto Ridgewood, adhering to a stop sign at Ridgewood and Airline, and then turning left from Ridgewood onto Airline towards New Orleans after crossing the Baton Rouge-bound lanes. Instead, Unangst exited the parking lot through a driveway fronting on Airline and crossed the three Baton Rouge-bound lanes of Airline on an angle to make a U-turn at the Ridgewood break in the median. After stopping in the lane closest to the median to yield to oncoming traffic heading towards New Orleans, he was rear-ended approximately five seconds later by the Goins vehicle.
On the basis of this evidence, the trial judge in well-written “REASONS FOR JUDGMENT” made the following conclusion, which we adopt as our own:
“Richard D. Unangst crossed over three (3) lanes and stopped his vehicle while making a left or U-hand turn, blocking the entire inside lane. In spite of testimony that a safer method of crossing the highway was available, the Court finds that this maneuver was dangerous, was not in the exercise of reasonable care, and constituted negligence which was a contributing proximate cause of the accident in question and the resulting injuries to the plaintiff. See Cory v. Employers Mut. Liab. Ins. Co. of Wis., 267 So.2d 761 (La.App. 2nd Cir.1972). It is well settled ‘That left turns or U-turns in motor vehicle traffic are the most dangerous maneuvers in which a motorist can indulge and that he must make sure that such a maneuver can be accomplished without danger to traffic to his left or rear.' Booth v. Aetna Cas. & Surety Co., 220 So.2d 188 (La.App. 1st Cir.1969); Cory v. Employers Mut, supra; Casimere v. Ryder Truck Rental, Inc., 324 So.2d 855 (La.App. 1st Cir.1967).
“The court is also of the opinion that Mary C. Goins should have observed the stopped car in front of her and could have prevented the collision if she had maintained a proper lookout and had timely applied her brakes and/or decelerated. Thus, the actions of Mary C. Goins also constituted negligence which was a contributing proximate cause of the accident and resulting injuries to plaintiff.”
The Booth and Cory cases, cited by the trial judge, are factually similar to our case. In Booth, under rainy conditions about 5 p.m., a motorist left a parked position on the shoulder of a four-lane divided highway in an attempt to execute a “U”-turn through a break in a three foot wide median. After noticing a following vehicle “a quarter of a mile or over 2000 feet away”, the motorist activated his left turn signal and traveled 70 to 80 feet in the outside lane and 40 to 50 feet in the inside lane *53 before reaching the median opening. He was stopped in the median lane for four to five seconds, waiting for an oncoming car to pass, before he was rear-ended by a following truck. The First Circuit Court of Appeal affirmed the trial court’s finding that the U-turning motorist was negligent under these circumstances.
Likewise, in Cory, the Second Circuit Court of Appeal held a motorist negligent in attempting a U-turn on a four-lane highway across an eight foot wide neutral ground. While waiting for opposing traffic to pass, the driver, in Cory, was stopped for 20 to 50 seconds and blocked most of the lane closer to the median before he was rear-ended. The Second Circuit noted that the narrow neutral ground provided virtually no protection to the turning motorist or following traffic, and made the maneuver “dangerous” under the circumstances.
Similarly, in our case, under dark and misty conditions, Unangst attempted a U-turn across a narrow median dividing a six-lane thoroughfare. After determining that following traffic was stopped at a signal “a good city block” away, Unangst traveled 45 yards across two lanes of traffic and was stopped in the third lane closest to the median for about four or five seconds before being rear-ended by the Goins vehicle. Under these circumstances, we deem the legal standards articulated by our brothers on the First and Second Circuits in the Booth and Cory decisions are persuasive in reaching a holding of concurrent negligence on the part of Unangst.[1]
UNINSURED MOTORIST COVERAGE
Midland claims that a liability policy covered the leased automobile driven by the host driver and that the named insured, the lessor, had specifically rejected uninsured motorist coverage. According to Midland, the host driver was not the named insured and the rejection of uninsured motorist coverage by the lessor does not violate LSA-R.S. 22:1406(D)(l)(a), requiring an insurer to provide uninsured motorist coverage unless a rejection is made by the named insured.
Because the trial court properly found the host driver concurrently negligent, we find it unnecessary to consider the merits of Midland’s argument that its policy did not provide uninsured motorist coverage. The policy does afford sufficient liability coverage to Unangst, thereby making Midland liable to plaintiff.
QUANTUM
After the accident, the then thirty-one year old plaintiff experienced tightness and pain in the lower back, which gradually worsened resulting in a noticeable limp. For approximately a month post-injury, plaintiff tried to continue his normal athletic activities but experienced increased pain after jogging, playing racquet ball, and duck hunting.
On January 12,1978, four weeks post-accident, plaintiff saw Dr. Raymond Kitziger, an orthopedic surgeon, who found diminished reflexion of the lumbar spine and diminished right lateral bending accompanied by right leg pain. The straight leg raising test was positive on the right side, but there was no tenderness of the sciatic nerve. Dr. Kit-ziger suspected some evidence of nerve root irritation and began treating plaintiff conservatively with analegesic and muscle relaxants. On a January 23 visit, plaintiff showed subjective improvement' but was continued on restricted activity.
On February 2, plaintiff manifested pain in the right calf and numbness in the right toe. Dr. Kitziger noted there was a greater degree of loss of reflexion than on his previous visit, soreness on the right straight leg *54 raising test persisted, and the right achilles reflex was diminished. This physician felt these findings were supportive of sciatic nerve problems. Because of increasing leg pain, plaintiff again saw Dr. Kitziger two weeks later and was placed on bed rest for one week.
On March 14, plaintiff showed improvement. His straight leg raising tests were negative and his achilles reflex seemed to be improved. He was placed on an exercise program, and six to seven weeks later was feeling “fairly well”.
On November 6, 1978 Crow returned to Dr. Kitziger with complaints of tingling and numbness in his right calf and foot. However, examination revealed no abnormality. Again, over two years post accident, Crow saw Dr. Kitizer on February 28, 1980, on complaints of calf and foot numbness and mild aching in his back and right leg. Examination revealed mild diminishment in lumbar function and straight leg raising tests were accomplished 90° bilaterally with minor soreness. Inflammatory medication was prescribed.
Dr. Kitziger testified that Crow had suffered accident-related S-l nerve root irritation from disc herniation and edema that responded well to conservative care. This physician was of the opinion Crow has a 5% disability of the back, but that it does not interfere with his activity to' any great degree. He described the disability as “more anatomic” in that the disc has suffered an “insult”, but is functionally normal. He testified, however, that the possibility of additional aggravation of plaintiff’s condition remains.
Dr. Edward Hess Connolly, a neurosurgeon, examined plaintiff on February 28, 1978, about two and a half months post-accident, on complaints of pain in the buttocks and right calf. This physician found limited low back flexion in the lumbar segment and a slightly depressed right ankle reflex. He was of the opinion that Crow was suffering from mild right S-l radiculi-tis (inflammation of the spinal nerve root) secondary to disc disease and consistent with a history of the auto accident.
In his second examination on March 13, 1978, Dr. Connolly found Crow’s straight leg raising tests were 90° bilaterally and his ankle reflexes were symmetrical. A review of X-ray findings indicated the L-4 and L-5 disc spaces were narrowed. Dr. Connolly felt plaintiff’s radiculitis was resolving and there would not likely be a recurrence if plaintiff “took care of himself”. Plaintiff was placed on an exercise program and medication to reduce inflammation of the nerve root. Dr. Connolly testified the accident aggravated plaintiff’s pre-existing disc degeneration which had subsided. He concluded plaintiff had resorted to his pre-accident state. Plaintiff was advised to wear lumbar support when engaging in heavy physical activity.
Plaintiff testified that from the time of the accident in December, 1977, until late March, 1978, there was substantial lessening of his symptoms, although he had difficulty in sleeping despite medication. Since March, 1978, he has experienced periodic pain originating in the buttocks and radiating into the leg. On these occasions, he reduced his athletic activities. Although plaintiff, an attorney, was unable to work at his law firm for a one week period, he has made no claim for loss of wages.
The evidence considered, we cannot say that the $20,000.00 general damage award constitutes an abuse of the trial judge’s discretion. See Reck v. Stevens, 373 So.2d 498 (La.1979); Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).
Accordingly, the judgment is affirmed.
AMENDED AND AFFIRMED.

. Citing LSA-R.S. 32:82, 101, 102, 104 and 122 and Allen v. Baucum, 218 So.2d 662 (La.App. 4th Cir.1969); Tauzier v. Travelers Insurance Company, 228 So.2d 754 (La.App. 4th Cir.1969) and Johnson v. Blanchard, 283 So.2d 513 (La. App. 1st Cir.1973), Midland contends that Un-angst was not negligent in stopping in the neutral ground area for oncoming traffic, even though his car blocked the median lane of traffic. Though we do not quarrel with the cited cases, we find the factual situations in Booth and Cory more closely akin to our case and thus more persuasive in our particular circumstances than the cited authorities.