295 So.2d 72 (1974)
Beatrice DeBOSE, wife of and Wendell DeBose
v.
Samuel T. TRAPANI et al.
No. 6226.
Court of Appeal of Louisiana, Fourth Circuit.
May 10, 1974.
Rehearing Denied June 6, 1974.
Writ Refused August 28, 1974.
*73 Frank J. D'Amico, New Orleans, for plaintiffs-appellants.
Bienvenu & Culver, Robert N. Ryan, New Orleans, for defendants-appellees.
Before REDMANN, SCHOTT and MORIAL, JJ.
MORIAL, Judge.
Plaintiffs, Beatrice DeBose and her husband Wendell DeBose, appeal from a jury verdict and judgment entered for them against defendants awarding plaintiffs $11,000.00 and $2,300.00 for damages and medical expenses respectively.
On May 1, 1971, plaintiffs were tenants of an apartment building in New Orleans, owned by defendants A. Lester Sarpy and Samuel T. Trapani. Plaintiffs had resided in the same apartment of the building for a number of years. While cleaning the floor of the balcony of her apartment, Mrs. DeBose reached for a bucket she was using and steadying herself with one hand on the railing began to stand up. As she did, the railing "gave way" and she fell to the ground striking her head and jaw on the cement.
Mrs. DeBose was rushed to Charity Hospital where her injuries were diagnosed as cerebral contusion, strain of the cervical and lumbar spines, contusion of the left thumb, right thigh, right knee and the loss of six teeth. She remained at Charity Hospital six days and upon her release was treated as an out-patient until July 1971. Following her discharge she was treated by three physicians and a dentist.
The residual effects of the fall include complaints of headaches, a two-inch scar on her chin and the loss of six upper front teeth, which requires that she now wear a full upper denture. Prior to the fall she wore a partial upper and lower denture.
The jury awarded Mrs. DeBose $11,000.00 for her injuries and $2,300.00 to her husband for medical expenses.
Five specifications of error are urged by plaintiffs.
The first specification alleges that the trial court restricted the testimony of plaintiffs' witnesses, Bertha Lockett, a tenant of the apartment building and, Edward C. Kurtz, Director of Safety and Permits for the City of New Orleans. Proffers were made of the testimony of these witnesses and are in the record. The testimony was properly limited. Plaintiffs obtained a verdict and the testimony, if improperly excluded, is not relevant to the issue before us.
The second specification alleges statements by the trial judge in the presence of the jury that were prejudicial to the attorney for plaintiffs and of testimony of plaintiffs' witnesses. Nothing in the record supports this allegation.
Thirdly, plaintiffs contend the court erred in its general charge to the jury by placing too much emphasis on the burden of proof required of the plaintiffs and argues in support of this specification the court was wrong in refusing to give special charges Nos. 3, 4, 6, 7, 8, 9, 10, 3a and 3c.
Special charges 3, 4, 6, 7, 8, 3a and 3c all bear on the liability of defendants. The jury did return a verdict for plaintiffs; therefore, we find argument as to these special charges without merit. Special *74 charges 9 and 10 pertain to items to be considered in setting the quantum of damages. These were more than adequately covered in the court's general charge on damages, and the refusal by the court to give these special charges is within its proper discretion. 88 C.J.S. § 399, p. 1088; Guerra v. W. J. Young Construction Company, 165 So.2d 882 (La.App. 4th Cir. 1964).
This specification includes plaintiffs' argument that the court wrongly instructed the jury that a damage award for personal injury is not subject to federal or state income taxes.
After having refused the defendants' requested special charge pertaining to the exclusion of the award from income for federal or state income taxes, the court instructed the jury in its general charges:
"* * * You are further instructed that any award made to the plaintiff as damages for personal injuries, if any such award is made, is not subject to federal or state income taxes. * * *"
The instruction is a truism. Section 104 of the Internal Revenue Code of 1954, 26 U.S.C. § 104 provides:
"(a) In General.Except in the case of amounts attributable to (and not in excess of) deductions allowed under section 213 (relating to medical, etc., expenses) for any prior taxable year, gross income does not include
* * * * * *
"(2) the amount of any damages received (whether by suit or agreement) on account of personal injuries or sickness. * * *"
A similar exclusion is found in LSA-R.S. 47:46(2).
Should a jury be apprised of such fact in a cautionary general instruction? We find no case in our jurisprudence which has examined the question. In recent years, federal and state courts have considered the question of a defendant's request for such a cautionary instruction. Divergent conclusions have been arrived at in a number of opinions.[1] The issue has also provoked penetrating differences among commentators, although a majority favor an appropriately worded charge.[2]
The present "tax consciousness" of the American public is judicially noticed. However, we are cognizant that few members *75 of the general public are aware of the statutory exclusion of personal injury awards from income for tax purposes. Is not the danger present that tax conscious juries will assume (erroneously) that the award is taxable and, therefore, make the judgment what they deem sufficient to allow the plaintiff to realize what they think he deserves after a deduction of the illusory tax. We recognize that the jury in this case was charged with placing a monetary value upon elements of damages that are capable only of imprecise measurement, but this does not warrant permitting the possibility of the jury assuming in their minds a misconception. The very purpose of the instruction was to eliminate that possibility. Simply, it was to dissuade the jury from adding to the award because of a mistaken belief.
The fourth and fifth specifications relate to quantum. Plaintiffs argue that the trial court erred in failing to grant a new trial as to quantum because of an improperly constituted jury in that the jury foreman was biased. Additionally, it is contended by plaintiffs that the quantum of the jury award resulted from bias and prejudice; and was, in fact, a quotient verdict which deprived plaintiffs of a fair jury trial.
After judgment was entered, plaintiffs filed a motion for new trial, alleging plaintiffs had learned of bias on the part of the jury foreman, Frederick J. Wainwright, during his voir dire examination at a subsequent trial.
At the hearing on plaintiffs' application for new trial, Mr. Wainwright testified that he had been one of two jurorsthe vote was ten for plaintiffs, two against who had not initially agreed with the verdict.
"THE WITNESS
I was one of the two that disagreed with it.
THE COURT
In other words you were opposed to giving them anything?
THE WITNESS
But still there was ten to two. According to the charge you gave I signed the verdict."
In denying plaintiffs' motion for a new trial, the court found that Mr. Wainwright was prejudiced against persons claiming whiplash injuries, which was not the injury involved in this case and said:
"* * * Mr. Wainwright was not the least bit prejudiced in the within case. His prejudice was solely against those persons claiming "whiplash" injuries (which was the claim in the case in which he stated that he was prejudiced). Furthermore, Mr. Wainwright voted for the plaintiffs in the within case, thus making the verdict unanimous."
Review of Mr. Wainwright's testimony indicates that this was exactly the situation.
We must note that the parties or their attorneys have the right to examine prospective jurors. LSA-C.C.P. Art. 1763. Voir dire examinations are closely tied to the evidence and aspects of a case; they are not to be conducted as an abstraction. The very purpose of the voir dire is to screen out biased or prejudiced jurors as plaintiffs contend Mr. Wainwright was. This record fails to disclose that plaintiffs exhausted either their challenges for cause of peremptory challenges. LSA-C.C.P. Arts. 1765, 1766. Plaintiffs can scarcely complain of bias which, if it did exist, conceivably should have been discerned on the voir dire examination which is not included in the transcript of the record before us.
Plaintiffs further argue that the jury award was a quotient verdict. They *76 attempt to support this contention with affidavits of two members of the jury, Martin A. MacDiarmid and Clarence Randall, filed with their application for a new trial.
Neither deponent testified at the hearing on the application for new trial, but Mr. Wainwright did. He testified:
REDIRECT EXAMINATION BY MR. D'AMICO:
Q After the jurors determined on the ten to two vote on liability, isn't it a fact that some of the jurors voted as high as twenty-five to thirty-five thousand dollars for the Plaintiff?
A Yes.
Q Isn't it a fact that some voted twenty-five hundred dollars, or nothing, for the Plaintiff?
A Yes.
Q Isn't it a fact on the first average of the jurors, you came up with $16,000.00 to award the Plaintiff?
A That's right.
Q You took an average and not the individual vote of each juror in arriving at an award to give the Plaintiff, isn't that a fact?
A Somebody askedsomebodywe took a poll of what each one thought the damage would be, in light of his own opinion of how much responsibility she had for the accident and how much the Defendant had for the accident. His own opinion. Then somebody else wantedwhen the figures were so far apart, somebody else wanted to know what was the average for this. And we made a list, a list of thenobody knew what anybody else said. It was allwell, each one had their own opinion
Q After you made the average
MR. RYAN:
Let him finish the answer.
MR. D'AMICO:
If you have any objections, address them to the Court.
THE WITNESS:
Since it was so far apart, somebody wanted to know what the average was. So they sat down, added it all up, and decided it. And it came out: $16,000.00. And somebody stood up and says, "Well, I will be damned if I give her that much. I voted for $8,000.00 and I will stand on it. That's too much money." Somebody else says, "Well, let's vote on ten."
And we voted on ten. And the vote came outthe vote came out: Four against and eight for. And again we never had enough.
And then the discussion went on about, you know, "What was too much" and "what wasn't."
Then the four people that voted against the $10,000.00 vote, that was a show of hands; we didn't make any secrets about that portion. There was four colored men on the panel. They were the four that objected to the $10,000.00 question.
One of the colored men, during the discussion says, "Well, I was holding out for $12,000.00. I will go down to $11,000.00."
Somebody else said "Well, let's take a vote on eleven."
And we took a vote on eleven, and the vote was unanimous at $11,000.00.
Q So you did compromise it or average the judgment out at $11,000.00?
MR. RYAN:
Your Honor, they didn't have any averages on that.
MR. D'AMICO:
You are testifying now. If you want to take the stand, take it.

*77 THE COURT:
The objection is well taken.
EXAMINATION BY MR. D'AMICO:
Q Was there a compromise or average taken by the jurors?
A It was a compromise.
Q It wasn't an average?
A It wouldn't average out mathematically.
$11,000.00 isn't an average of anything as far as my figures are concerned, but it was a compromise, since we couldn't agree onthere was two votes for $2500.00; there was two votes for $35,000.00; there was two votesit's kind of hazy. I don't remember exactly. There was two votes for $25,000.00; and some for eight, and three, and it was spread all over.
THE COURT:
But at least nine of them voted for $11,000.00.
THE WITNESS:
All twelve of us did.
THE COURT:
In other words, you went along with that?
THE WITNESSES:
I voted for the $11,000.00, too.
THE COURT:
Alright.
THE WITNESS:
Like I say, I don't know none of the men. I couldn't recognize any of them if I saw them again. After one colored man said, "I will go down to $11,000.00," the other four, holding out for a $10,000.00 vote, they, too, voted for the $11,000.00 judgment.
It is not the arriving at the average of the jurors opinions as to the amount of damage which makes the quotient verdict bad, but the vice is in the prior agreement to be bound by the result of the addition and division. 89 C.J.S. Trial § 472, p. 113, et seq.
Abundantly clear from the affidavits of MacDiarmid and Randall as well as the testimony of Wainwright, is the fact that there was no prior agreement among the jurors. The award finally agreed upon was not arrived at via averaging, but after disagreement on the amount of the average, a vote was taken on each sum, including the amount awarded, stated by each of several jurors before the award of $11,000.00 was approved.
Further, we conclude that the award was not in the nature of a compromise verdict, i. e., an abandonment by some jurors of conscientious convictions on a material issue in return for surrender by others of like settled opinion on another issue.
Plaintiffs cite several cases to buttress their argument for an increase in the award. Little would be gained by a review of the quantum awarded in Knotts v. Employers Casualty Company, 177 So.2d 630 (La.App. 3 Cir. 1965); Johnson v. Blanchard, 283 So.2d 513 (La.App. 1 Cir. 1973); Lefevre v. Allstate Insurance Company, 258 So.2d 397 (La.App. 4 Cir. 1972), and Duplechin v. Pittsburgh Plate Glass Company, 265 So.2d 787 (La.App. 3 Cir. 1972). Suffice it to state that the injuries of Mrs. DeBose do not approach the injuries sustained by the plaintiffs in the cited cases.
Much discretion is left to a jury. LSA-R.C.C. Article 1934(3); Fox v. State Farm Mutual Automobile Insurance Company, 288 So.2d 42 (La. 1974).
We are convinced that the verdict did justice and the jury award was not so inadequate as to be manifestly incorrect.
For the foregoing reasons the judgment is affirmed. Plaintiffs to pay all costs.
Affirmed.
NOTES
[1] Pertinent cases can be found in Nordstrom, "Income Taxes and Personal Injury Awards," 19 Ohio St.L.J. 212 (1958); Note, "Income Taxation and Damages for Personal Injuries," 50 Ky.L.J. 601 (1962); Note "Income Taxes and the Computation of Lost Future Earnings in Wrongful Death and Personal Injury Cases," 29 Md.L.Rev. 177. Hall v. Chicago & N. W. Ry., 5 Ill.2d 135, 125 N.E.2d 77 (1955), states the majority view that it is error to inform the jury that plaintiff's award will not be taxable. Dempsey v. Thompson, 363 Mo. 339, 251 S.W.2d 42 (1952) stands for the minority position that refusal to give an appropriate cautionary instruction is prejudicial error. Other courts have adopted more flexible rules, holding that the giving of an instruction is discretionary with the trial court, Anderson v. United Air Lines, Inc., 183 F.Supp. 97 (S.D.Cal.1960), or that the instruction, while proper, is not mandatory, and that a refusal to give a proper instruction is not reversible error. McWeeney v. New York, N. H. & H. R. R., 282 F.2d 34 (2 Cir. 1960). Finally some of the cases which have found an instruction to be improper can be distinguished on the basis of the wording of the requested charge. In Maus v. New York, Chicago & St. Louis R. R. Co., 165 Ohio St. 281, 135 N.E.2d 253 (1956), for example, the requested instruction merely adverted to the section 104 exclusion and added that "you must take this fact into consideration in arriving at the amount of your verdict in this case."
[2] Approving an instruction: II Harper & James, The Law of Torts § 25.12, at 1327-28 (1956); Feldman, "Personal Injury Awards: Should Tax-Exempt Status be Ignored?" 7 Ariz.L.Rev. 272 (1965); Burns, "A Compensation Award for Personal Injury or Wrongful Death is Tax-Exempt: Should We Tell the Jury?" 14 De Paul L.Rev. 320 (1965); Nordstrom, 19 Ohio St.L.J. 212 (1958), supra, note 1; Note, 50 Ky.L.J. 601 (1962), supra, note 1; 26 Ford.L.Rev. 98 (1957); 4 U.C.L.A.L.Rev. 636 (1957); 25 U.Cin.L.Rev. 385 (1956); 44 Ky.L.J. 384 (1956); 9 Vand. 543 (1956); 11 Wash. & Lee L.Rev. 66 (1954); 42 Geo.L.J. 149 (1953); 32 Tex.L.Rev. 108 (1953). Opposing instruction: 35 N.Car.L.Rev. 401 (1957); 42 Iowa L.Rev. 134 (1956); 8 Ark.L.Rev. 174 (1953); 33 B.U.L.Rev. 114 (1953); 21 U.Chi.L.Rev. 156 (1953).