376 So.2d 609 (1979)
Edward G. FRANCIS
v.
GOVERNMENT EMPLOYEES INSURANCE COMPANY and Roberta B. Brown.
No. 10355.
Court of Appeal of Louisiana, Fourth Circuit.
October 10, 1979.
Rehearing Denied November 19, 1979.
Writ Refused January 18, 1980.
*610 Hammett, Leake, Hammett, Hulse & Nelson, T. Michael Masterson, New Orleans, for defendant-appellant.
Manard, Schoenberger & Ryan, Robert L. Manard, III, New Orleans, for plaintiff-appellee.
Before STOULIG, SCHOTT and BEER, JJ.
BEER, Judge.
Plaintiff-appellee Edward Francis sued Government Employees Insurance Company (his uninsured motorists carrier) and Roberta Brown, seeking damages for injury sustained in an automobile accident. The parties stipulated the uninsured status of Brown who was clearly at fault. At trial, there was no serious issue as to liability, and the jury returned a verdict in Francis' favor for $15,000 which Government Employees here contends should be reduced and Francis contends was inadequate.
The only other issue before us involves the jury award of a statutory penalty of 12% of the amount of the judgment plus $3,000 for attorneys' fees.
Government Employees claimed (and continues here to claim) a reasonable basis upon which to defend Francis' quantum demand and, thus, challenges the assessment of attorneys' fees and penalties as unwarranted; Francis claims that he is entitled to an increase in attorneys' fees due to this appeal.
Finally, in support of his demand for an increased award, Francis contends that erroneous jury charges were given regarding the taxability of lost wages and the burden of proof for future medical expenses.
At the scene of the accident, neither driver reported injury to the investigating officer, but, soon after the accident, Francis was seen and, thereafter, treated by Dr. Mina Yumukoglu, an internist. The initial diagnosis was cervical strain, but this was later changed to a diagnosis of aggravation of pre-existing osteoarthritis of the neck. Francis consulted Dr. Kenneth Adatto, an orthopedic surgeon, who basically confirmed the findings of Dr. Yumukoglu. Shortly before trial, an examination was conducted by Dr. Dorsey Dysart which indicated positive findings in the cervical zone. Thereupon, Dr. Adatto recommended a myelogram which was interpreted as positive and led to Dr. Adatto's recommendation for anterior cervical fusion. Assuming a successful operation, Dr. Adatto estimated approximately 20% disability and substantial medical expenses. No operation has taken place.
At trial, evidence was adduced to indicate that Francis was in an earlier automobile accident (1973) with somewhat similar subsequent complaints. Dr. Adatto acknowledged that the narrowing at the C5-6 upon which he based his diagnosispre-existed the 1976 accident. Medical records revealed that Francis was treated for complaints of neck pain six months before the accident which is the basis of this litigation.
The myelogram report noted a prominent C5-C6 spur. When Dr. Adatto was asked what caused the spur, he replied, "Well, the arthritis."
Francis also experienced another automobile accident in 1978 while still being treated by Dr. Yumukoglu.
Dr. George Cary, called by the defendant, testified that the x-rays taken between 1973 to 1978 indicated that Francis had an indentation in the myelographic column at the level of C5 and 6 secondary to degenerative arthritic spurring at the joint at this point. He felt that indentation indicated degenerative spurring rather than disc protrusion. In effect, Dr. Gary testified that he did not find it possible to tell if or how much Francis' condition had been aggravated by the accident in question. He felt that Francis had experienced a progressive increasing arthritic trend which could be *611 unrelated to any accident or could be an aggravation due to the accident.
All this considered, we find that the jury award is neither excessive nor inadequate and indicates no abuse of discretion.
LSA-R.S. 22:658 sets out the statutory basis upon which an insurer may be required to pay penalties and attorneys' fees when it arbitrarily refuses to pay a claim within a specified time. Soniat v. State Farm Mutual Auto. Ins. Co., 340 So.2d 1097 (La.App.4th Cir. 1976), relied upon here by able counsel for Francis, involved unusual circumstances in which the insurer conceded liability for the policy limits of its uninsured motorist coverage, but refused to pay those limits until the insured released a liability claim against the driver of the insured vehicle. State Farm paid only two medical bills totaling $532.50, out of total undisputed medical bills exceeding $1,800. The court stated:
"Had State Farm unconditionally tendered the unquestioned special damages plus some reasonable amount in payment for the general damages, then the penalty provision would not apply. Since State Farm had no reasonable basis for its failure to tender a reasonable amount in unconditional payment of its obligation under the policy, we accordingly assess the statutory penalty of 12% of $4,467.50 ($5,000.00 less $532.50 paid)."
Here, however, there isand continues to bea genuine issue as to quantum, and the record, itself, supports a positive conclusion that a serious dispute existed and still exists.[1]
In Reed v. U. S. Fidelity and Guaranty Co., 302 So.2d 354 (La.App. 3rd Cir. 1974), plaintiff's home was allegedly damaged by windstorm. Plaintiff's own estimate ($2,734.24) of the damage was challenged by defendants, who contended that only $274 worth of damage was caused by wind, the rest being damaged by forces which were not insured against. The court observed:
"Where there is a serious dispute as to the nature of the loss, thus leaving the question of coverage in doubt, the insurer's refusal to pay the claim is not arbitrary, capricious or without probable cause within meaning of statute authorizing penalties and attorney's fees for refusal to pay claims when refusal is arbitrary, capricious or without probable cause. LSA-R.S. 22:658."
Also, in Icklone v. Travelers Indemnity Company, 345 So.2d 203-204 (La.App. 3rd Cir. 1977), a serious question of fact arose as to whether a roof was damaged by windstorm. Although the jury found, in fact, that it was, the Court of Appeal concluded:
"From the above resume of the testimony, it is apparent that there was a serious question of fact as to whether the roof was damaged by a windstorm. Although the jury decided in plaintiff's favor, on the basis of the jury's evaluation of the credibility of the witnesses, the defendant was not arbitrary, capricious or without probable cause in denying the claim. We conclude the jury was manifestly erroneous in awarding penalties and attorney's fees."
Here, also, we believe that the jury has manifestly erred in assessing penalties and attorneys' fees. Explanation for this exists in the record:
The trial court's charge regarding statutory penalties and attorneys' fees discussed deliberate and capricious denial of liability but failed to delineate denial of liability from contentions with respect to quantumall notwithstanding the fact that liability was never more than a nominal issue. Furthermore, the quantum issue in this case was complicated by a specific provision of the applicable insurance policy which provides for paymentwith respect to medical expensesof all reasonable expenses incurred within one year from the date of the accident and restricts payment to those medical expenses caused by the accident. It is important to note that a *612 substantial majority of the expenses claimed by Francis were incurred more than a year after the accident and were vigorously contested on both grounds by the insurance company.
Thus, we conclude that Government Employees was proceeding to the defense of this litigation in a manner that could not, as a matter of law, be described as capricious and that the jury's conclusion to the contrary was provoked by the incorrectness of the charge noted above.
Turning, finally, to Francis' contentions regarding certain charges, we note, in connection with the charge regarding future medical expenses, that the court instructed the jury as follows:
"If you find that the plaintiff is entitled to a verdict in his favor, then in arriving at the amount of damages to be awarded to him, you may take into consideration the actual cost or value of any medical bills or expenses that have been incurred in the past as well as any likely medical expenses that a preponderance of the evidence proves are going to be reasonably certain to occur in the future."
In Wexler v. Martin, 367 So.2d 111 (La. App. 4th Cir. 1979), we noted there a ". . . showing, . . . more probably than not, [that] these expenses will be incurred" is satisfactory. However, the instruction noted above is not prejudicial, particularly in light of the undisputed fact that the court gave clear instructions that the plaintiff's burden of proof in a civil case is by "a preponderance of the evidence."
As to the taxable status of future lost wages, the court charged the jury "that any amount you award here today, if any, is not subject to income tax." Plaintiff-appellee contends that this is error in that Republic Automotive Parts, 68 Tax Court 822, has held that tort recoveries regarding compensation for lost income must be taxed as ordinary income. DeBose v. Trapani, 295 So.2d 72 (La.App. 4th Cir. 1974), is controlling here and authorizes the charge.
For the reasons noted above, the judgment of the Civil District Court for the Parish of Orleans is amended so as to delete the award of a statutory penalty of 12% of the amount of the judgment plus $3,000 for attorneys' fees. In all other respects, the judgment is affirmed.
AMENDED AND AFFIRMED.
NOTES
[1] The direct examination testimony of plaintiff specifically reveals that a settlement offer was made toand rejected byFrancis.