GULF OFFSHORE CO., A DIVISION OF POOL CO. *v.*
MOBIL OIL CORP. ET AL.

No. 80–590.  Argued March 31, 1981—Decided July 1, 1981

POWELL, J., delivered the opinion of the Court, in which BURGER, C. J., and WHITE, REHNQUIST, and STEVENS, JJ., joined, and in Parts I and II of which BRENNAN, MARSHALL, and BLACKMUN, JJ., joined. BLACKMUN, J., filed an opinion concurring in part and concurring in the result, in which BRENNAN and MARSHALL, JJ., joined, *post,* p. 488. STEWART, J., took no part in the consideration or decision of the case.

*Charles D. Kennedy* argued the cause for petitioner. With him on the brief was *Bradley A. Jackson.*

*Frank E. Caton* argued the cause and filed a brief for respondent Mobil Oil Corp. *Joseph D. Jamail* argued the cause for respondent Gaedecke. With him on the brief were *Gus Kolius, John B. Neibel,* and *Nat B. King.*

JUSTICE POWELL delivered the opinion of the Court.

This case requires us to determine whether federal courts have exclusive jurisdiction over personal injury and indemnity cases arising under the Outer Continental Shelf Lands Act, 67 Stat. 462, as amended, 43 U. S. C. § 1331 *et seq.* (1976 ed. and Supp. III). We also consider whether the rule of *Norfolk & Western R. Co.* v. *Liepelt,* 444 U. S. 490 (1980), that the jury be instructed that personal injury damages awards are not subject to federal income taxation, is applicable to such a case.

I

Respondent, Mobil Oil Corp., contracted with petitioner, Gulf Offshore Co., for the latter to perform certain completion operations on oil drilling platforms offshore of Louisiana. As part of the agreement, petitioner promised to indemnify Mobil for all claims resulting directly or indirectly from the work. While the work was in progress in September 1975, the advent of Hurricane Eloise required that workers be evacuated from oil platforms in the Gulf of Mexico.

Steven Gaedecke was an employee of petitioner working on an oil drilling platform above the seabed of the Outer Continental Shelf. As the storm approached, a boat char-

476

tered by Mobil took him safely aboard. Shortly thereafter, while assisting crewmen attempting to evacuate other workers from the platforms in turbulent sea, he was washed across the deck of the vessel by a wave. He suffered injuries primarily to his back.

Gaedecke brought this suit for damages in the District Court of Harris County, a Texas state court, alleging negligence by Mobil and the boatowner. Mobil filed a third-party complaint for indemnification against petitioner.[1] In its third-party answer, petitioner denied that the state court had subject-matter jurisdiction over the third-party complaint. Petitioner argued that Mobil's cause of action arose under the Outer Continental Shelf Lands Act (OCSLA), and that OCSLA vested exclusive subject-matter jurisdiction in a United States district court. The Texas trial court rejected this contention, and the case went to trial before a jury.

In submitting the case to the jury, the trial court denied a request by petitioner to instruct them that personal injury damages awards are not subject to federal income taxation and that they should not increase or decrease an award in contemplation of tax consequences. The jury found Mobil negligent and awarded Gaedecke $900,000 for his injuries. The jury also found, however, that Gaedecke sustained his injuries while performing work subject to the contract of indemnification. Based on the two verdicts, the trial judge entered judgment against petitioner in the amount of $900,000.

The Texas Court of Civil Appeals affirmed. 594 S. W. 2d 496 (1979). It held that the Texas state courts had subject-

---

[1] Mobil claimed indemnification on the grounds of both its contract with petitioner and the allegation that petitioner's negligence caused the accident. Prior to trial Gaedecke entered into a conditional settlement agreement with Mobil, which limited his potential recovery against Mobil to $200,000; in return Mobil agreed to proceed against petitioner for indemnification only on the basis of the contract. Gaedecke also settled his claim with the boatowner.

matter jurisdiction over the causes of action.[2] It acknowl-
edged that OCSLA governed the case, but found no explicit
command in the Act that federal-court jurisdiction be exclu-
sive. The court also observed that exclusive federal-court
jurisdiction was unnecesary because the Act incorporates as
federal law in personal injury actions the laws of the State
adjacent to the scene of the events, when not inconsistent
with other federal laws. 43 U. S. C. § 1333 (a)(2). Thus,
the court reasoned, "[t]he end result would be an application
of the same laws no matter where the forum was located,
whether state or federal." 594 S. W. 2d, at 502. The court
also held that the trial court did not err in refusing to in-
struct the jury that damages awards are not subject to fed-
eral income taxation. The Texas Supreme Court denied
review.

We granted certiorari to resolve a conflict over whether
federal courts have exclusive subject-matter jurisdiction over
suits arising under OCSLA[3] and to consider whether an in-
struction that damages are not taxable is appropriate in such
a case. 449 U. S. 1033 (1980).

## II

### A

The general principle of state-court jurisdiction over cases
arising under federal laws is straightforward: state courts
may assume subject-matter jurisdiction over a federal cause
of action absent provision by Congress to the contrary or dis-
abling incompatibility between the federal claim and state-

---

[2] Texas had *in personam* jurisdiction over Mobil and petitioner, each
of whom does business in Texas. Gaedecke was a resident of Harris
County, Tex.

[3] See *Pool* v. *Kemper Ins. Group,* 386 So. 2d 1006 (La. App. 1980);
*Friedrich* v. *Whittaker Corp.,* 467 F. Supp. 1012 (SD Tex. 1979); *Gravois*
v. *Travelers Indemnity Co.,* 173 So. 2d 550 (La. App. 1965). See also
*Fluor Ocean Services, Inc.* v. *Rucker Co.,* 341 F. Supp. 757, 760 (ED La.
1972).

court adjudication. *Charles Dowd Box Co.* v. *Courtney,* 368 U. S. 502, 507–508 (1962); *Claflin* v. *Houseman,* 93 U. S. 130, 136 (1876). This rule is premised on the relation between the States and the National Government within our federal system. See The Federalist No. 82 (Hamilton). The two exercise concurrent sovereignty, although the Constitution limits the powers of each and requires the States to recognize federal law as paramount. Federal law confers rights binding on state courts, the subject-matter jurisdiction of which is governed in the first instance by state laws.[4]

In considering the propriety of state-court jurisdiction over any particular federal claim, the Court begins with the presumption that state courts enjoy concurrent jurisdiction. See *California* v. *Arizona,* 440 U. S. 59, 66–67 (1979); *Charles Dowd Box Co.* v. *Courtney,* 368 U. S., at 507–508. Congress, however, may confine jurisdiction to the federal courts either explicitly or implicitly. Thus, the presumption of concurrent jurisdiction can be rebutted by an explicit statutory directive, by unmistakable implication from legislative history, or by a clear incompatibility between state-court jurisdiction and federal interests. See *ibid.; Claflin, supra,* at 137. See also *Garner* v. *Teamsters,* 346 U. S. 485 (1953) (grievance within jurisdiction of National Labor Relations Board to prevent unfair labor practice not subject to relief by injunction in state court).

## B

No one argues that Congress explicitly granted federal courts exclusive jurisdiction over cases arising under OCSLA. Congress did grant United States district courts "original

---

[4] Permitting state courts to entertain federal causes of action facilitates the enforcement of federal rights. If Congress does not confer jurisdiction on federal courts to hear a particular federal claim, the state courts stand ready to vindicate the federal right, subject always to review, of course, in this Court. See *Martin* v. *Hunter's Lessee,* 1 Wheat. 304, 346–348 (1816). This practical concern was more important before the statutory creation in 1875 of general federal-question jurisdiction.

jurisdiction of cases and controversies arising out of or in connection with any operations conducted on the outer Continental Shelf . . . ." 43 U. S. C. § 1333 (b).[5] It is black letter law, however, that the mere grant of jurisdiction to a federal court does not operate to oust a state court from concurrent jurisdiction over the cause of action.[6] *United States* v. *Bank of New York & Trust Co.,* 296 U. S. 463, 479 (1936).

OCSLA declares the Outer Continental Shelf to be an area of "exclusive federal jurisdiction." 43 U. S. C. § 1333 (a)(1). *Chevron Oil Co.* v. *Huson,* 404 U. S. 97, 100 (1971).[7]

---

[5] Congress amended and recodified the jurisdictional provisions of OCSLA in 1978, without effecting any change that casts light on the issue of exclusive federal-court jurisdiction before us today. Pub. L. 95–372, Title II, § 208 (b), 92 Stat. 657. See S. Conf. Rep. No. 95–1091, p. 114 (1978). But cf. Pub. L. 95–372, Title II, § 208 (a)(2)(B), 92 Stat. 657 (contemplating suit by the Attorney General in state court to remedy violations of the Act). The grant of jurisdiction to a federal district court is now codified at 43 U. S. C. § 1349 (b)(1) (1976 ed., Supp. III). In this opinion, we employ the Code citations prior to the recodification.

[6] This principle defeats petitioner's reliance on the provision in § 1333 (a)(2): "All of such applicable laws shall be administered and enforced by the appropriate officers and courts of the United States." The phrase "such applicable laws" refers to the laws of the adjacent States, which § 1333 (a)(2) incorporates as federal law for the Outer Continental Shelf. See *infra,* at 480–481. The language relied upon merely makes clear that these borrowed state laws are to be enforced like other federal laws, and nothing indicates an intent to exclude state courts from the subject-matter jurisdiction they exercise generally over federal claims.

[7] The legislative history confirms that the purpose of OCSLA was "to assert the exclusive jurisdiction and control of the Federal Government of the United States over the seabed and subsoil of the outer Continental Shelf, and to provide for the development of its vast mineral resources." S. Rep. No. 411, 83d Cong., 1st Sess., 2 (1953) (hereinafter 1953 S. Rep.). Congress enacted OCSLA in the wake of decisions by this Court that the Federal Government enjoyed sovereignty and ownership of the seabed and subsoil of the Outer Continental Shelf to the exclusion of adjacent States. See *United States* v. *Texas,* 339 U. S. 707 (1950); *United States* v. *Louisiana,* 339 U. S. 699 (1950). See also *United States*

Petitioner does contend that the assertion of exclusive political jurisdiction over the Shelf evinces a congressional intent that federal courts exercise exclusive jurisdiction over controversies arising from operations on the Shelf. See *Fluor Ocean Services, Inc.* v. *Rucker Co.*, 341 F. Supp. 757, 760 (ED La. 1972). This argument is premised on a perceived incompatibility between exclusive federal sovereignty over the Outer Continental Shelf and state-court jurisdiction over controversies relating to the Shelf. We think petitioner mistakes the purpose of OCSLA and the policies necessitating exclusive federal-court jurisdiction.

OCSLA extends the "Constitution and laws and civil and political jurisdiction of the United States" to the subsoil and seabed of the Outer Continental Shelf and to "artificial islands and fixed structures" built for discovery, extraction, and transportation of minerals. 43 U. S. C. § 1333 (a)(1). All law applicable to the Outer Continental Shelf is federal law, but to fill the substantial "gaps" in the coverage of federal law, OCSLA borrows the "applicable and not inconsistent" laws of the adjacent States as surrogate federal law.

---

v. *California*, 332 U. S. 19 (1947). See generally *Maryland* v. *Louisiana*, 451 U. S. 725, 730 (1981). Congress chose to retain exclusive federal control of the administration of the Shelf because it underlay the high seas and the assertion of sovereignty there implicated the foreign policies of the Nation. See 1953 S. Rep., at 6. Much of OCSLA provides a federal framework for the granting of leases for exploration and extraction of minerals from the submerged lands of the Shelf. See 43 U. S. C. §§ 1334–1343.

Congress was not unaware, however, of the close, longstanding relationship between the Shelf and the adjacent States. See 1953 S. Rep., at 6. This concern manifested itself primarily in the incorporation of the law of adjacent States to fill gaps in federal law. See *Rodrigue* v. *Aetna Casualty Co.*, 395 U. S. 352, 365 (1969). It should be emphasized that this case only involves state-court jurisdiction over actions based on incorporated state law. We express no opinion on whether state courts enjoy concurrent jurisdiction over actions based on the substantive provisions of OCSLA.

§ 1333 (a)(2); *Rodrigue* v. *Aetna Casualty Co.,* 395 U. S. 352, 355–359 (1969). Thus, a personal injury action involving events occurring on the Shelf is governed by federal law, the content of which is borrowed from the law of the adjacent State, here Louisiana. See *id.,* at 362–365. Cf. *United States* v. *Kimbell Foods, Inc.,* 440 U. S. 715 (1979) (state law incorporated as federal common law concerning priority of liens created by federal law).

The OCSLA plan is not inimical to state-court jurisdiction over personal injury actions. Nothing inherent in exclusive federal sovereignty over a territory precludes a state court from entertaining a personal injury suit concerning events occurring in the territory and governed by federal law. *Ohio River Contract Co.* v. *Gordon,* 244 U. S. 68 (1917). See 16 U. S. C. § 457 (personal injury and wrongful-death actions involving events occurring "within a national park or other place subject to the exclusive jurisdiction of the United States, within the exterior boundaries of any State" shall be maintained as if the place were under the jurisdiction of the State). Cf. *Evans* v. *Cornman,* 398 U. S. 419, 424 (1970) (residents of an area of exclusive federal jurisdiction within a State are "subject to the process and jurisdiction of state courts"). "The judiciary power of every government looks beyond its own local or municipal laws, and in civil cases lays hold of all subjects of litigation between parties within its jurisdiction, though the causes of dispute are relative to the laws of the most distant part of the globe." The Federalist No. 82, p. 514 (H. Lodge ed. 1908) (Hamilton), quoted in *Claflin* v. *Houseman,* 93 U. S., at 138. State courts routinely exercise subject-matter jurisdiction over civil cases arising from events in other States and governed by the other States' laws. See, *e. g., Dennick* v. *Railroad Co.,* 103 U. S. 11 (1881). Cf. *Allstate Ins. Co.* v. *Hague,* 449 U. S. 302 (1981). That the location of the event giving rise to the suit is an area of exclusive federal jurisdiction rather than another State, does not introduce any new limitation on the forum State's subject-

matter jurisdiction.[8]  *Ohio River Contract Co.* v. *Gordon, supra,* at 72.

Section 1333 (a)(3) provides that "adoption of State law as the law of the United States shall never be interpreted as a basis for claiming any interest in or jurisdiction on behalf of any State for any purpose over the seabed and subsoil of the outer Continental Shelf, or the property and natural resources thereof or the revenues therefrom." Petitioner argues that state-court jurisdiction over this personal injury case would contravene this provision. This argument again confuses the political jurisdiction of a State with its judicial jurisdiction. Section 1333 (a)(3) speaks to the geographic boundaries of state sovereignty, because Congress primarily was concerned in enacting OCSLA to assure federal control over the Shelf and its resources. See n. 7, *supra.* The language of the provision refers to "any interest in or jurisdiction over" real property, minerals, and revenues, not over causes of action. Indeed, opponents of OCSLA urged Congress to extend the political boundaries of the States seaward over the Shelf, at least for some purposes. See 99 Cong. Rec. 7230 (remarks of Sen. Ellender), 7232 (remarks of Sen. Long) (1953). The Senate Report explains that § 1333 (a)(3) was intended to make plain that the adoption of state law as federal law cannot be the basis for a claim by the State "for participation in the administration of or revenues from the areas outside of State boundaries." 1953 S. Rep., at 23.

We do not think the legislative history of OCSLA can be read to rebut the presumption of concurrent state-court jurisdiction, given Congress' silence on the subject in the statute

---

[8] OCSLA does supersede the normal choice-of-law rules that the forum would apply. See *Chevron Oil Co.* v. *Huson,* 404 U. S. 97, 102–103 (1971). It also provides where proper venue will be found: "in the judicial district in which any defendant resides or may be found, or in the judicial district of the State nearest the place the cause of action arose." 43 U. S. C. § 1349 (b)(1) (1976 ed., Supp. III).

itself. Petitioner relies principally on criticisms by the two Senators from Louisiana, Ellender and Long, who opposed the bill that eventually became OCSLA.[9] Yet "[t]he fears and doubts of the opposition are no authoritative guide to the construction of legislation." *Schwegmann Bros.* v. *Calvert Distillers Corp.*, 341 U. S. 384, 394 (1951).[10] Moreover, the amendments offered by the Senators sought to confer political control over the Shelf and its mineral wealth on the States, not jurisdiction on the state courts over OCSLA cases. See 99 Cong. Rec. 7230 (Sen. Ellender), 7232 (Sen. Long) (1953).[11]

## C

The operation of OCSLA will not be frustrated by state-court jurisdiction over personal injury actions. The factors generally recommending exclusive federal-court jurisdiction over an area of federal law include [12] the desirability of uni-

---

[9] Petitioner also relies on a report made to the Senate Committee by the Department of Justice, which argued that the Federal Government should "have the exclusive control of lawmaking and law enforcement" on the Shelf. 1953 S. Rep., at 6. But Congress rejected the Department's premise that the Shelf is "not comparable to . . . federally owned areas within a State." *Ibid.* See *Rodrigue* v. *Aetna Casualty Co.*, 395 U. S., at 365. Section 1333 (a)(1) rather provides that the federal laws apply to the Shelf "to the same extent as if the outer Continental Shelf were an area of exclusive Federal jurisdiction located within a State."

[10] Senator Long did express the fear that OCSLA placed exclusive jurisdiction over all civil suits in federal district courts. 1953 S. Rep., at 66 (minority report); 99 Cong. Rec. 7233 (1953).

[11] Most of the Senators' statements regarding OCSLA's effect on state-court jurisdiction criticize placing exclusive criminal jurisdiction in federal courts. See, *e. g., id.*, at 7231–7232 (Sen. Ellender). But the statute that gives federal courts exclusive jurisdiction over federal crimes, 18 U. S. C. § 3231, has no relevance to this case.

[12] Exclusive federal-court jurisdiction over a cause of action generally is unnecessary to protect the parties. The plaintiff may choose the available forum he prefers, and the defendant may remove the case if it could have been brought originally in a federal court. 28 U. S. C. § 1441 (b). Also, exclusive federal jurisdiction will not prevent a state court from deciding a federal question collaterally even if it would not have subject-matter

form interpretation, the expertise of federal judges in federal law, and the assumed greater hospitality of federal courts to peculiarly federal claims.[13] These factors cannot support exclusive federal jurisdiction over claims whose governing rules are borrowed from state law. There is no need for uniform interpretation of laws that vary from State to State. State judges have greater expertise in applying these laws and certainly cannot be thought unsympathetic to a claim only because it is labeled federal rather than state law.

Allowing personal injury and contract actions in state courts will advance interests identified by Congress in enacting OCSLA. A recurring consideration in the deliberations leading to enactment was "the special relationship between the men working on these [platforms] and the adjacent shore to which they commute to visit their families." *Rodrigue* v. *Aetna Casualty Co.*, 395 U. S., at 365. Allowing state-court jurisdiction over these cases will allow these workers, and their lawyers, to pursue individual claims in familiar, convenient, and possibly less expensive fora. See *Chevron Oil Co.* v. *Huson,* 404 U. S., at 103 (state statute of limitations applies to personal injury actions arising under OCSLA).

In summary, nothing in the language, structure, legislative history, or underlying policies of OCSLA suggests that Congress intended federal courts to exercise exclusive jurisdiction over personal injury actions arising under OCSLA. The Texas courts had jurisdiction over this case.

### III

The Court of Civil Appeals held that petitioner was not entitled to an instruction cautioning the jury that personal

---

jurisdiction over a case raising the question directly. See Note, Exclusive Jurisdiction of Federal Courts in Private Civil Actions, 70 Harv. L. Rev. 509, 510 (1957).

[13] See Redish & Muench, Adjudication of Federal Causes of Action in State Court, 75 Mich. L. Rev. 311, 329–335 (1976); Note, 70 Harv. L. Rev., *supra* n. 12, at 511–515.

injury damages awards are not subject to federal income taxation, § 104 (a)(2) of the Internal Revenue Code of 1954, 26 U. S. C. § 104 (a)(2). In so ruling the court relied on *Johnson* v. *Penrod Drilling Co.,* 510 F. 2d 234, 236–237 (CA5) (en banc) *(per curiam)*, cert. denied, 423 U. S. 839 (1975), a Jones Act case where the Court of Appeals prohibited presenting evidence or instructing the jury as to the impact of taxes on damages awards based on lost wages. This Court subsequently held that a defendant in a suit brought under the Federal Employers' Liability Act (FELA), 45 U. S. C. § 51 *et seq.,* is entitled to an instruction that damages for lost future wages are not subject to federal income taxation. *Norfolk & Western R. Co.* v. *Liepelt,* 444 U. S. 490 (1980).[14] Petitioner now argues that *Liepelt* applies to an OCSLA personal injury action and that this case should be remanded for a new trial on damages before a properly instructed jury.[15]

Our first task is to determine the source of law that will govern whether such an instruction must be available in an OCSLA case. OCSLA, as discussed above, mandates that state laws apply as federal laws "[t]o the extent that they are applicable and not inconsistent with this subchapter or with other Federal laws." 43 U. S. C. § 1333 (a)(2). In any particular case, the adjacent State's law applies to those

---

[14] *Liepelt* also found error in the trial court's refusal to allow the defendant to introduce evidence showing the effect of income taxes on the plaintiff's future earnings. 444 U. S., at 493–496. This case does not present the question whether this second holding is applicable to OCSLA cases.

[15] Respondents argue that we cannot address the necessity of giving the requested instruction because petitioner did not preserve its objection in the trial court in the manner required by Texas law. This argument is incorrect. The Texas Court of Civil Appeals held on the merits that petitioner was not entitled to the instruction.

We also reject respondents' contention that we are foreclosed from deciding the issue because petitioner did not introduce any evidence about the effect of taxation on Gaedecke's future earnings. No evidentiary predicate is required to instruct a jury *not* to consider taxes.

areas "which would be within the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf . . . ." *Ibid.* The statute thus contains an explicit choice-of-law provision. See n. 8, *supra.* The parties agree that the substantive law of Louisiana applies to this case, unless it is inconsistent with federal law.

To apply the statutory directive a court must consider the content of both potentially applicable federal and state law. Subsequent to the decision of the Texas court, as noted above, we held in *Liepelt, supra,* that a defendant in an FELA case is entitled to an instruction that damages awards are not subject to federal income taxation.[16] As FELA afforded no guidance on this issue, the holding articulated a federal common-law rule. The purpose was to eliminate from the de-

---

[16] Respondents' argument that *Liepelt* should apply prospectively only is insubstantial. Here, we address a change in the law occurring while the case is on direct appeal. "[A]n appellate court must apply the law in effect at the time it renders its decision." *Thorpe* v. *Housing Authority of City of Durham,* 393 U. S. 268, 281 (1969); see *United States* v. *Schooner Peggy,* 1 Cranch 103 (1801). While there well might be an exception to the rule to prevent "manifest injustice," *Bradley* v. *Richmond School Board,* 416 U. S. 696, 717 (1974), this equitable exception does not reach a private civil suit where the change does not extinguish a cause of action but merely requires a retrial on damages before a properly instructed jury. *Lang* v. *Texas & Pacific R. Co.,* 624 F. 2d 1275, 1279–1280, and n. 9 (CA5 1980). Indeed, considerations of fairness support retroactive application: failure to give the instruction may lead to the plaintiff recovering a windfall award. *Norfolk & Western R. Co.* v. *Liepelt, supra,* at 497–498.

The overwhelming weight of authority supports retroactive application of this decision. See *O'Byrne* v. *St. Louis Southwestern R. Co.,* 632 F. 2d 1285 (CA5 1980); *Flanigan* v. *Burlington Northern Inc.,* 632 F. 2d 880 (CA8 1980); *Lang* v. *Texas & Pacific R. Co., supra; Crabtree* v. *St. Louis-San Francisco R. Co.,* 89 Ill. App. 3d 35, 411 N. E. 2d 19 (1980). Other cases have applied *Liepelt* retroactively without comment. *Cazad* v. *Chesapeake & Ohio R. Co.,* 622 F. 2d 72 (CA4 1980); *Seaboard Coast Line R. Co.* v. *Yow,* 384 So. 2d 13 (Ala. 1980). But see *Ingle* v. *Illinois Central Gulf R. Co.,* 608 S. W. 2d 76 (Mo. App. 1980), cert. denied, 450 U. S. 916 (1981).

liberations of juries "an area of doubt or speculation that might have an improper impact on the computation of the amount of damages." 444 U. S., at 498.[17] Thus, the instruction furthers strong federal policies of fairness and efficiency in litigation of federal claims. If Congress had been silent about the source of federal law in an OCSLA personal injury case, *Liepelt* would require that the instruction be given.

But Congress was not silent. It incorporated for this case the applicable law of Louisiana, but only "[t]o the extent [it is] not inconsistent" with federal law. The statute does not distinguish between federal statutory and judge-made law. It would seem then that if Louisiana law is "inconsistent," *Liepelt* controls. Doubt arises, however, because in OCSLA Congress borrowed a remedy provided by state law and thereby "specifically rejected national uniformity" as a paramount goal. *Chevron Oil* v. *Huson,* 404 U. S., at 104. In *Chevron,* we held that Louisiana rather than federal common law provided the federal statute of limitations for personal injury damages actions under OCSLA. We recognized that "Congress made clear provision for filling the 'gaps' in

---

[17] The general applicability of *Liepelt* is indicated by the Court's quotation with approval of the explanation of need for the instruction in *Domeracki* v. *Humble Oil & Refining Co.,* 443 F. 2d 1245, 1251 (CA3), cert. denied, 404 U. S. 883 (1971), a longshoreman's action based on the unseaworthiness of a vessel.

" 'We take judicial notice of the "tax consciousness" of the American public. Yet, we also recognize, as did the court in Dempsey v. Thompson, 363 Mo. 339, 251 S. W. 2d 42 (1952), that few members of the general public are aware of the special statutory exemption for personal injury awards contained in the Internal Revenue Code.

" ' "[T]here is always danger that today's tax-conscious juries may assume (mistakenly of course) that the judgment will be taxable and therefore make their verdict big enough so that plaintiff would get what they think he deserves after the imaginary tax is taken out of it."

" 'II Harper & James, The Law of Torts § 25.12, at 1327–1328 (1956).' " *Liepelt, supra,* at 497.

None of the Court's reasoning was directed particularly at FELA.

federal law; it did not intend that federal courts fill those 'gaps' themselves by creating new federal common law." *Id.,* at 104–105. In this case, we face an analogous question: does the incorporation of state law preclude a court from finding that state law is "inconsistent" with a federal common-law rule generally applicable to federal damages actions?

We need answer this question only if Louisiana law would not require that the instruction be given upon timely request. The court below never addressed this question [18] but relied solely on federal case law now superseded. Under these circumstances it is the better practice to remand this case to the Texas Court of Civil Appeals for a determination of whether Louisiana law requires the instruction and, if it does not, whether *Liepelt* displaces the state rule in an OCSLA case. If the court decides that it was error to refuse the instruction, it may then address respondents' argument that petitioner was not prejudiced by the error.

*Affirmed in part, vacated in part, and remanded.*

JUSTICE STEWART took no part in the consideration or decision of this case.

JUSTICE BLACKMUN, with whom JUSTICE BRENNAN and JUSTICE MARSHALL join, concurring in part and concurring in the result.

I join the Court's opinion as to Parts I and II, and I concur in the decision to remand this case for further proceedings as

---

[18] The Louisiana cases that have come to our attention do not provide conclusive guidance. Compare the earlier case of *Guerra* v. *Young Construction Corp.,* 165 So. 2d 882 (La. App. 1964) (not error to *deny* the instruction), with the later cases of *DeBose* v. *Trapani,* 295 So. 2d 72 (La. App. 1974), and *Francis* v. *Government Employers' Ins. Co.,* 376 So. 2d 609 (La. App. 1979) (proper to *give* the instruction). These Louisiana cases were considered by the Court of Appeals for the Fifth Circuit in a diversity case, *Croce* v. *Bromley Corp.,* 623 F. 2d 1084 (1980), cert. denied *sub nom. Bromley Corp.* v. *Cortese,* 450 U. S. 981 (1981), and it followed the holding in *Guerra.*

to the applicability of the rule adopted in *Norfolk & Western R. Co.* v. *Liepelt,* 444 U. S. 490 (1980). I write separately because I have reservations about the Court's expressed intention to apply the *Liepelt* rule expansively, a ruling I consider unwise and unnecessary to this case in its present posture.

As the Court makes clear, *ante,* at 488, the Texas Court of Civil Appeals on remand must determine, first, what Louisiana law requires as to this form of instruction, and, second, whether that state rule is "inconsistent" with OCSLA or "other Federal laws." 43 U. S. C. § 1333 (a)(2). The Court acknowledges, and I agree, that the choice-of-law provision contained in OCSLA creates "[d]oubt," *ante,* at 487, as to whether Congress intended state law or federal law to govern the grant of this instruction. As I understand OCSLA, the purpose of incorporating state law was to permit actions arising on these federal lands to be determined by rules essentially the same as those applicable to actions arising on the bordering state lands. Congress apparently intended to provide a kind of local uniformity of result, regardless of whether the action arose on shelf lands or on neighboring state lands. I would read the statute, thus, to encourage use of state law, and I would permit the state court to weigh, as an initial matter and only if the Louisiana rule differs from the *Liepelt* rule, whether Congress' desire for local uniformity outweighs any perceived need, as a matter of federal common law, for the instruction. I do not find it self-evident that *Liepelt* created a general "federal common-law rule" that so greatly "furthers strong federal policies of fairness and efficiency in litigation of federal claims," *ante,* at 486, 487, as to require its application in cases governed by the Outer Continental Shelf Lands Act. In my view, this question was not settled in *Liepelt,* and it remains open for future adjudication.