GULF OFFSHORE COMPANY, a DIVISION OF THE POOL COMPANY, Appellant,

v.

MOBIL OIL CORPORATION, et al., Appellee.

No. B2159.

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 28, 1982.

Rehearing Denied Feb. 25, 1982.

Bradley A. Jackson, Royston, Rayzor, Vickery & Williams, Houston, for appellant.

Frank Caton, Crain, Caton, James & Oberwetter, Joseph Jamail, Jamail, Kolius & Mithoff, Houston, for appellee.

Before J. CURTISS BROWN, C. J., and JUNELL and PRICE, JJ.

JUNELL, Justice.

This cause returns before this court on remand from the Supreme Court of the United States. *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 101 S.Ct. 2870, 69 L.Ed.2d 784 (1981). Plaintiff Steven Gaedecke, an employee of Gulf Offshore Co., brought suit in a state court in Texas against Mobil Oil Corp. and others for damages for personal injuries sustained while he and other workers on a Mobil drilling platform offshore from Louisiana were being evacuated from the platform because of an approaching hurricane. The drilling platform was located above the sea bed of the Outer Continental Shelf. Mobil filed a third party complaint against Gulf Offshore Co. for indemnity under both tort and contract theories. Trial to a jury resulted in a judgment for Gaedecke against Mobil and, on the indemnity claim, for Mobil against Gulf Offshore.

On appeal to this court the trial court judgment was affirmed. *Gulf Offshore Co. v. Mobil Oil Corp.*, 594 S.W.2d 496 (Tex.Civ. App.—Houston [14th Dist.] 1979). After the Texas Supreme Court refused writ of error, n.r.e., the Supreme Court of the United States granted certiorari and in a decision handed down on July 1, 1981, affirmed this court's holding that the Outer Continental Shelf Lands Act did not vest exclusive jurisdiction of this case in the federal courts and that the district court of Harris County, Texas, had subject matter jurisdiction, but vacated this court's holding that it was not error for the trial court to refuse to instruct the jury that its award was not subject to income taxes. The U. S. Supreme Court remanded the case to this court for a determination of whether Louisiana law requires such an instruction, and, if it does not, whether the United States Supreme Court's decision in *Norfolk & Western Railway Co. v. Liepelt*, 444 U.S. 490, 100 S.Ct. 755, 62 L.Ed.2d 689 (1980), displaces the State rule in an OCSLA case. Finally, the Supreme Court stated in its opinion that if this court holds the trial court erred in refusing the requested instruction we may then address the argument of Gaedecke and Mobil that Gulf Offshore was not prejudiced by the error.

1. Does Louisiana law require a jury instruction that damage awards are not subject to income taxation?

■ Cases bearing on this question have been submitted to Louisiana appellate

courts on three occasions. On each occasion the appeal was to the Court of Appeals of Louisiana, Fourth Circuit, and involved land-based, common law negligence actions. It seems clear from a reading of the opinions that Louisiana law makes the giving of an explanatory instruction concerning income taxation discretionary with the trial court.

Gulf Offshore relies principally on the case of *DeBose v. Trapani,* 295 So.2d 72 (La.App. 4th Cir. 1974), *writ denied,* 299 So.2d 359 (La.1974), in support of its contention that the instruction is mandatory. Nowhere in its opinion does the court imply that the instruction is mandatory. The court simply rejected the argument that it was error to give the instruction.

Ten years before the *DeBose* decision a different panel of the same Louisiana appellate court found no error in the trial court's refusal to give such an instruction and noted that the court had properly instructed the jury as to the compensatory nature of damages and had specifically listed nine elements of damages which the jury might consider in arriving at its award. *Guerra v. W. J. Young Construction Co.,* 165 So.2d 882 (La.App. 4th Cir. 1964), *writ ref'd,* 167 So.2d 676 (La.1964). The trial judge gave a similar instruction in the instant case.

In the third case, *Francis v. Government Employees Insurance Co.,* 376 So.2d 609 (La. App. 4th Cir. 1979) *writ denied,* 378 So.2d 1391 (La.1980), the court simply stated that the requested instruction was authorized by *DeBose* and held that the trial court had not erred in giving it.

It is clear that *Guerra* is the only case in which the Louisiana Appellate court was presented with the precise question involved here. In the absence of contrary authority we are of the opinion that *Guerra* constitutes Louisiana law to the effect that such a jury instruction is not mandatory. Under the Louisiana law the Texas trial court did not err in refusing to give the instruction.

2. Does *Liepelt* displace the Louisiana rule in this OCSLA case?

In *Norfolk & Western Railway Co. v. Liepelt,* 444 U.S. 490, 100 S.Ct. 755, 62 L.Ed.2d 689, the United States Supreme Court held that a defendant in an FELA death case is entitled to an instruction that damage awards are not subject to federal income taxation and that the Illinois trial court had erred in refusing the requested instruction. The case was reversed and remanded to the Illinois state court.

Gulf Offshore contends that *Liepelt* controls our decision on this question in the instant case.

The OCSLA mandates that the laws of the adjacent state apply as surrogate federal law "[t]o the extent that they are applicable and not inconsistent with this Act or with other Federal laws." 43 U.S.C. § 1333(a)(2).

To help explain the question we have been requested to answer, we quote from the majority opinion of the United States Supreme Court in the instant case as follows:

> If Congress had been silent about the source of federal law in an OCSLA personal injury case, *Liepelt* would require that the instruction be given.

> But Congress was not silent. It incorporated for this case the applicable law of Louisiana, but only "[t]o the extent [it is] not inconsistent" with federal law. The statute does not distinguish between federal statutory and judge-made law. It would seem then that if Louisiana law is "inconsistent", *Liepelt* controls. Doubt arises, however, because in OCSLA Congress borrowed a remedy provided by state law and thereby "specifically rejected national uniformity" as a paramount goal. *Chevron Oil v. Huson,* 404 U.S. 97, 104, 92 S.Ct. 349, 354, 30 L.Ed.2d 296 (1972). In *Chevron,* we held that Louisiana rather than federal common law provided the federal statute of limitations for personal injury damages actions under OCSLA. We recognized that "Congress made clear provision for filling the 'gaps' in federal law; it did not intend that federal courts fill those 'gaps' them-

selves by creating new federal common law." *Id.* at 104–105, 92 S.Ct. at 354. In this case, we face an analogous question: does the incorporation of state law preclude a court from finding that state law is "inconsistent" with a federal common law rule generally applicable to federal damages actions?

101 S.Ct. at 2880.

Our study of the OCSLA and the United States Supreme Court's decisions in *Rodrigue v. Aetna Casualty & Surety Co.*, 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969), *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), and the instant case leads us to the conclusion that the incorporation of state law does not *preclude* a court from finding that state law is inconsistent with a federal common law rule generally applicable to federal damages actions. However, we are of the opinion that such a federal common law rule is not "applicable federal law" in this case, a suit for damages for personal injuries which is governed by Louisiana state law applied as federal law under the OCSLA. We are mindful that in OCSLA the Congress of the United States adopted state laws only to the extent that they are not inconsistent with federal laws; however, it was recognized by the Supreme Court in *Huson* that unless a federal law is *applicable* to the particular case, the state law is not inconsistent with it. In the instant case OCSLA has borrowed a remedy provided by the state law of Louisiana: a cause of action for damages for personal injuries. We think that when OCSLA borrowed the remedy, it borrowed the remedy in its entirety. In other words, OCSLA made the entire state cause of action *applicable* federal law, enforceable as federal law. This conclusion leads to our holding that OCSLA has borrowed from the law of Louisiana and has made applicable federal law in this case the Louisiana law which makes discretionary the giving of a jury instruction that damage awards are not subject to income taxation. It follows that if the Louisiana law concerning the requested instruction has become surrogate federal law applicable in this case, then the *Liepelt* rule is not *applicable* federal law and hence the surrogate federal law is not inconsistent with the rule announced in *Liepelt.*

We are of the opinion that our decision on this point is not in conflict with the Supreme Court's opinion in the instant case. If the Supreme Court had not intended to leave open the possibility of this very decision, it would have not expressed doubt about the application of the *Liepelt* rule and would have decided the question itself and not remanded to this court for determination.

Also, our decision on this question is in harmony with the opinion of the Supreme Court of the United States in *Huson.* In that case the court recognized that a "comprehensive body of federal law" was not necessarily applicable under OCSLA. 404 U.S. at 101, 92 S.Ct. at 352. Holding that the Louisiana statute of limitations applied as federal surrogate law, the Supreme Court noted in *Huson* that a cause of action for personal injuries must be governed by the law of the adjacent state of Louisiana, applied as federal law, including the state statute of limitations. Then the court said in *Huson* :

> The policies underlying the federal absorption of state law in the Lands Act make this result particularly obvious. As we pointed out in *Rodrigue*, Congress recognized that "the Federal Code was never designed to be a complete body of law in and of itself" and thus that a comprehensive body of State law was needed. *Rodrigue v. Aetna Casualty and Surety Co.*, 395 U.S. at 358, 361, 89 S.Ct. at 1838, 1840.

404 U.S. at 103, 92 S.Ct. at 353.

Our decision also comports with Congress' recognition as pointed out in both *Rodrigue* and *Huson* that special relationships between the men working on these artificial islands and the adjacent shore to which they commute favors application of state law with which these men and their attorneys are familiar.

Also as stated by the court in *Huson*, "If Congress' goal was to provide a comprehen-

sive and familiar body of law, it would defeat that goal to apply only certain aspects of a state personal injury remedy in federal court." 404 U.S. at 103, 92 S.Ct. at 353. This statement applies to the question here presented with just as much, if not more, force than to the question presented in *Huson.*

It seems important to this court that the United States Supreme Court in the instant case saw fit to restate with approval its earlier statement in *Huson* to the effect that in OCSLA Congress borrowed a remedy provided by state law and thereby "specifically rejected national uniformity" as a paramount goal. 101 S.Ct. at 2880.

For the reasons set forth above we hold that the rule announced in *Liepelt* does not displace the state rule in an OCSLA case.

We have thus decided the questions mandated by the Supreme Court of the United States in this case and we affirm the judgment of the trial court.